970 P.2d 1

**Marvin ERICKSON and Sharon Erickson, husband and wife, Plaintiffs–Respondents,**

v.

**STATE of Idaho, Defendant–Appellant.**

No. 23188.

Supreme Court of Idaho.

Sept. 15, 1998.

Rehearing Denied Dec. 10, 1998.

Alan G. Lance, Attorney General; Steven J. Schuster, Deputy Attorney General; Boise, for appellant. Stephen J. Schuster argued.

John F. Magnuson, Coeur d'Alene; Witherspoon, Kelley, Davenport & Toole, P.S., Coeur d'Alene, for respondents. Edward J. Anson argued.

SILAK, Justice.

This case involves the determination of what the ordinary high water mark (OHWM) of Lake Coeur d'Alene (the Lake) was in 1890, at the time of admission of the Territory of Idaho to statehood. It is not disputed that the State of Idaho (the State) owns the bed of the Lake below the OHWM as it existed at the time of statehood. The district court held that the OHWM of the Lake was 2121 and therefore quieted title to all lands above 2121 feet adjacent to their lot in the respondents.

**I.**

## FACTS AND PROCEDURAL BACKGROUND

Respondents Marvin and Sharon Erickson (the Ericksons) claim ownership to 2.5 acres of land in Kidd Island Bay, of which only 0.17 acres are above 2128 feet above mean sea level United States Geological Survey datum,[1] the current water level of the Lake during the summer and early fall. The land that the Ericksons claim ownership to was created artificially in the late 1950s and early 1960s from dredge spoil when the bay was dredged to improve navigability. The dredging caused the 0.17 acres to be raised to an elevation level greater than 2128 feet. The Ericksons claim that dams owned by Washington Water Power Company (WWP) have artificially raised the summer level of the Lake, and that the OHWM of the Lake at the time of statehood was 2121 feet. The State argues that the Lake was 2128 feet at the time of statehood, and that the dams just hold the OHWM at 2128 feet later into the summer months.

The WWP completed construction in 1907 on three dams located at Post Falls, approximately ten miles downstream from the outlet of the Lake. Therefore, the Ericksons claim that the land which now appears as an island was actually connected to the mainland before the completion of the dams. Currently, the Lake is regulated at an elevation of 2128 feet during the summer months until the fall. Both parties agree that the Lake is like a bathtub, in that it has the same level at all locations.

The Ericksons filed a complaint to quiet title to 2.5 acres of land on March 30, 1991. At trial, the State introduced several experts to testify as to the condition of the soil in the Lake. The experts testified that volcanic ash that was present since the early 1800s established that, due to the way the ash had cooled, the deposits below 2128 feet had developed under water.

The State also introduced testimony from an expert regarding the vegetation of the

---

1. All elevations referred to throughout this opinion are measured in accordance with the mean sea level United States Geological Survey datum.

Lake. The expert testified that the current vegetation consists of grasses that can grow in water all year and concluded that, based on shoreline and tree stumps studies, the OHWM in 1890 was about 2128 feet.

The Ericksons presented evidence from various sources. These sources included: a survey completed in 1892 by an original surveyor for the federal government survey; evidence from proceedings before the United States Department of the Interior during the 1940s and 1950s which found that Kidd Island was not an omitted island from the survey but had been connected to the mainland at the time of the government survey; evidence of homesteaders who had sworn that they resided upon and cultivated significant portions of their land, some of which is currently submerged under water, in order to "prove up" the homestead; evidence about easements purchased by WWP for perpetual easements to flood; evidence that the Ericksons have always been assessed by the county for taxes on the entire property, even the portion below 2128 feet; evidence of newspaper reports regarding the flooding of homesteads due to the dams; and evidence of tree stumps located in the various bays at elevations below 2128 feet.

At the conclusion of the trial, the district court concluded that the OHWM of the Lake at the time of statehood was 2121 feet and quieted title to the lands above that elevation in the Ericksons. The State appeals.

## II.

### ISSUES ON APPEAL

The State presents the following issues on appeal:

(1) Whether the district court correctly applied the test for determining the OHWM as set forth in Idaho Code § 58–104(9) and *Heckman Ranches, Inc., v. State*, 99 Idaho 793, 589 P.2d 540 (1979) to the facts of this case.

(2) Whether there was substantial and competent evidence to support the district court's conclusion that the OHWM of Lake Coeur d'Alene is 2121 feet above mean sea level United States Geological Survey datum.

The Ericksons add the additional issue on appeal:

(3) Whether the Ericksons are entitled to an award of attorney fees and costs incurred on appeal.

## III.

### STANDARD OF REVIEW

The determination of the OHWM will not be reversed if supported by competent and substantial evidence. *Heckman Ranches, Inc. v. State of Idaho*, 99 Idaho 793, 797, 589 P.2d 540, 544 (1979). An appellate court is free to draw its own conclusions from the facts presented and is not bound by the legal conclusions of the trial court. *Kootenai Elec. Co-op. v. Washington Water Power Co.*, 127 Idaho 432, 435, 901 P.2d 1333, 1336 (1995).

If substantial and competent evidence supports the trial court's findings, they will not be set aside on appeal. *Id.* at 434–35, 901 P.2d at 1335–336. When the trial judge is the trier of fact, it is the duty of that judge to weigh the conflicting evidence and testimony and to judge the credibility of the witnesses. *Id.* at 435, 901 P.2d at 1336. For evidence to be substantial, it must be of sufficient quality that reasonable minds could conclude that the verdict was proper. *Bott v. Idaho State Bldg. Auth.*, 128 Idaho 580, 586, 917 P.2d 737, 743 (1996).

## IV.

### ANALYSIS

A. **The District Court Correctly Applied The Test For Determining The "Natural Or Ordinary High Water Mark (OHWM)" As Set Forth In Idaho Code § 58–104(9) And *Heckman Ranches, Inc. v. State* To The Facts Of This Case.**

It is well established that the State owns in trust for the public title to the bed of navigable water below the OHWM as it existed at the time the State was admitted into the Union. *Heckman*, 99 Idaho at 796, 589 P.2d at 543. Additionally, it is well estab-

lished that the OHWM is " the line which the water impresses on the soil by covering it for sufficient periods to deprive the soil of its vegetation and destroy its value for agricultural purposes." *Id.;* I.C. § 58–104(9). Neither party disputes the definition of the OHWM or that the State owns the title to the beds of the Lake below that mark.

The State argues that the district court erred in not applying the correct legal standards, as stated in *Heckman,* to the facts of this case. In its findings of fact, conclusions of law, and judgment, the district court applied the following legal standard: (1) the legal standard that the State held title to the land below the OHWM as it existed at the time of statehood; and (2) the correct definition of the OHWM pursuant to I.C. § 58–104(9). This is the correct legal standard to be applied when determining the OHWM of a lake or river. Therefore, we hold that the district court did not apply an incorrect legal standard.

**B. The District Court's Findings Of Fact Concerning The Location Of The OHWM At 2121 Feet Are Not Supported By Substantial And Competent Evidence.**

▮ In bringing a quiet title action, the Ericksons had the burden of proof to establish that they held the title to the subject property. Idaho case law has stated that "[o]ne who would claim the ownership of property of which the legal title stands of record in another, or that the same is held by such person in trust for the one so claiming, must establish such claim by evidence that is clear, satisfactory and convincing." *Russ Ballard & F.A.I. v. Lava Hot Springs Resort, Inc.,* 97 Idaho 572, 579, 548 P.2d 72, 79 (1976) (quoting *In re Capolino's Estate,* 94 Cal.App.2d 574, 210 P.2d 850, 852 (1949)). Considering that the current OHWM of the Lake is 2128 feet, it is presumed that the State is holding the title to these lands in trust for the public. In order to prove otherwise, the Ericksons have the burden of proving their title by clear and convincing evidence.

The Ericksons had to prove, by clear and convincing evidence, the OHWM by establishing a "line which the water impresses on the soil." I.C. § 58–104(9). The district court concluded that the OHWM was at 2121 feet based on various factual evidence. The district court's conclusion was based upon: (1) evidence of homesteaders using the lands for hayfields, including newspaper accounts and homestead applications; (2) evidence of tree stumps lying below 2128 feet; (3) evidence of beaches at various levels along the Lake; (4) the original government surveyor's notes regarding meander lines and points; (5) evidence of soil between 2128 and 2121 feet which is good for farming; and (6) the purchase of flood easements by WWP. Although there was substantial evidence presented by the Ericksons supporting the above facts, none of this evidence proved that the OHWM in 1890 was at 2121 feet. None of this evidence included expert testimony as to a line impressed upon the soil as of 1890.

In a leading case in which this Court determined the OHWM of the Salmon River, this Court recognized that the OHWM must be determined by defining a line impressed upon the soil. *Heckman,* 99 Idaho at 799, 589 P.2d at 546. The *Heckman* Court relied upon expert testimony of clear cut lines on the bank of the river. *Id.* at 798, 589 P.2d at 545. Additionally, the *Heckman* Court rejected evidence of cattle being able to roam on the land to establish the OHWM:

The natural or ordinary high water mark of a river refers to a line impressed on the soil by the action of the water and contemplates a vegetation test as an aid in determining its location. In this context, whether the soil is valuable for agricultural purposes refers to the existence of vegetation and the soil's suitability for raising agricultural crops. Whether cattle could roam on the soil does not aid in determining the location of the natural or ordinary high water mark.

*Id.* at 799, 589 P.2d at 546. In stating that a case with different facts might result in a different holding, the Court stated that "[g]iven different topographical features, soil composition or less erosive water action the result may have been otherwise." *Id.* The focus of the Court was on evidence which

tended to prove or define a line impressed upon the soil, in accordance with the statute.

■ None of the evidence presented by the Ericksons included evidence as to a line impressed upon the soil at the 2121 foot level in 1890. Most all of the evidence presented by the Ericksons did not even specify a water level. The pictures, the newspaper articles and the sworn statements of homesteaders presented by the Ericksons, did not show or support a line impressed upon the soil. Most of this evidence does not even give the measurement of the water level at the time the picture or statement was taken. The evidence of pictures, newspaper articles and homesteaders' sworn testimony does not establish a line impressed upon the soil in 1890, considering that the evidence does not show a specific water level.

■ Likewise, the evidence presented by the Ericksons showing the various Lake levels from 1892 until 1985 does not establish the OHWM. The OHWM is not determined by how often the water drops below or rises above a certain level. As we have stated above, to prove the OHWM, evidence must be presented which establishes a specific line impressed upon the soil. Evidence of how many days the water dropped below a certain level in a certain year does not establish at what level the soil was deprived of its agricultural value and at what level there is a line impressed upon the soil. Additionally, the evidence presented by the Ericksons that there were characteristics of beaches at 2121 feet and 2123 feet and that the soil below 2128 feet contained elements necessary for good farming does not tend to prove the OHWM. This evidence was introduced at trial through statements made by the State's experts. Nevertheless, with the knowledge of this evidence, the State's experts still concluded that the OHWM in 1890 was at 2128 feet. Therefore, we do not believe that this evidence substantially supports the finding that the OHWM of the Lake in 1890 was at 2121 feet.

■ The only significant evidence of specific water levels presented by the Ericksons included the federal government survey and the evidence of dead tree stumps. Meander lines are lines established by the government

survey. They are "survey lines drawn along the banks of navigable streams for the purposes of defining the sinuosities of the banks of the stream, and as the means of ascertaining the price to be paid by the purchaser to the government." Heckman 99 Idaho at 796, 589 P.2d at 543. It is well established that "meander lines established by surveys of public lands bordering on navigable rivers or streams are not boundary lines, rather the river or stream forms the boundary line." Id. Therefore, the meander lines cannot be used to establish the OHWM. Additionally, the meander lines in the case at bar varied between 2121 and 2128 feet even though both parties agreed that the Lake is like a bathtub and all depths in the Lake must be equal. This evidence fails to clearly establish the OHWM of the Lake in 1890.

■ Some of the tree stump evidence introduced by the Ericksons was at a water level below 2128 feet. Although the Ericksons introduced an expert on the effects of trees being inundated with water, this expert was unable to state that in 1890 the OHWM was 2121 feet. To the contrary, the State introduced evidence that these trees were likely part of a cottonwood swamp.

Although it did not bear the burden of proof, the State presented affirmative expert testimony of lines on the soil present in 1890. The State's expert, when asked what he believed the high level of the Lake to be, responded "from what the soils tell us or the pictures told as we interpret the soils, the [ ] high lake level [ ] is where we felt it would be from what it is told here at pretty much 2128 to 29, right in there." The expert then stated that he believed that the Lake level was between 2128 to 2129 feet "certainly prior to 1890." This opinion was based upon scientific analysis of the soil as to how the soil had developed, how ash from a volcano which erupted around 1800 had cooled, and evidence of various shorelines.

The Ericksons presented evidence indicating flooding of homesteaders' lands. This evidence, however, also lacked specific water levels. The Ericksons did not prove by clear and convincing evidence that a specific line was impressed upon the soil at 2121 feet in

1890. Idaho Code § 58–104(9) requires that the OHWM be determined by the line which impresses upon the soil. Considering that this is what is statutorily required, the Ericksons failed to prove by clear and convincing evidence that the OHWM of the Lake in 1890 was at 2121 feet. The decision of the district court is not supported by substantial and competent evidence. The decision of the district court is therefore reversed.

### C. The Ericksons Are Not Entitled To An Award Of Attorney Fees And Costs Incurred On Appeal.

The Ericksons have requested attorney fees and costs on appeal. Idaho Code section 12–121 provides for the Court to award attorney fees to a prevailing party. I.C. § 12–121 (1998). Idaho Appellate Rule 40(a) allows costs "as a matter of course to the prevailing party unless otherwise provided by law or order of the Court." I.A.R. 40. Because the Ericksons are not the prevailing party, this Court declines to award costs or attorney fees to them.

### V.

### CONCLUSION

We hold that although the district court applied the correct legal standard in determining the OHWM of the Lake in 1890, the district court's decision was not supported by substantial and competent evidence. The evidence is insufficient to establish that the line impressed upon the soil in 1890 was at 2121 feet. The decision of the district court is reversed. The case is remanded for entry of judgment dismissing the Ericksons' quiet title claim, and for such other orders as necessary in accordance with this opinion. Costs on appeal are awarded to the State. No attorney fees are awarded on appeal.

TROUT, C.J., SCHROEDER and WALTERS, JJ., and BENGTSON, J., pro tem., concur.