17 P.3d 260

**IDAHO FOREST INDUSTRIES, INC.,** an Idaho corporation, Plaintiff–Counter-defendant–Respondent,

v.

**HAYDEN LAKE WATERSHED IM-PROVEMENT DISTRICT,** Defendant–Counterplaintiff–Respondent.

Hayden Lake Watershed Improvement District, Third Party Plaintiff–Respondent,

v.

State of Idaho, Department of Lands, Third Party Defendant–Appellant.

State of Idaho, ex rel., Dirk Kempthorne, Governor, Pete T. Cenarrusa, Secretary of State, Alan G. Lance, Attorney General, J.D. Williams, State Controller, Marilyn Howard, Superintendent of Public Instruction, as the State Board of Land Commissioners, and Stanley F. Hamilton, Director, Department of Lands, Counterplaintiffs–Appellants,

v.

William Thomas Richards, aka W.T. Richards, Sheila Richards, Sheila Griffiths Richards, aka Sheila Richards, husband and wife, and Idaho Forest Industries, Counterdefendants–Respondents.

No. 25524.

Supreme Court of Idaho, Coeur d'Alene, October 2000 Term.

Dec. 18, 2000.

Hon. Alan G. Lance, Attorney General, Boise, for appellant. David J. Barber, Deputy Attorney General, argued.

Scott W. Reed, Coeur d'Alene, for respondents Richards and Idaho Forest Industries.

TROUT, Chief Justice.

This is an appeal from the district court's judgment quieting title in the record title holders to thirty acres on the landward side of a dike. The State of Idaho (the State) claims title to the property under the equal footing and public trust doctrines. We affirm the judgment of the district court.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Idaho Forest Industries, Inc. and Tom and Sheila Richards (collectively "IFI") have title of record to approximately thirty acres of land on the landward (west) side of a dike across Honeysuckle Bay on Hayden Lake. The Hayden Lake Protective Association ("Association") owns the remaining five-acre parcel. IFI traces its title through prior title holders to the original patent from the Unit-

ed States issued in 1909. In 1910, Hillyard Townsite Company, which held title to the property at that time, built a dike across the easterly portion of the property to prevent the periodic flooding of the land. In 1920, Atlas Tie Company, which ultimately became IFI, received title to the property and record title remains in IFI at the present time. The 1920 deed conveying the property describes the eastern boundary of the property as the shore line of the lake, which in 1920 would have been to the east of the dike.

The Association's parcel contains a portion of the dike, a spillway, and an area used as a sump. Under a judgment entered in 1962, the Association is charged with keeping the lake from exceeding a high water mark of 2,239 feet above mean sea level (msl). The Hayden Lake Watershed Improvement District (HLWID), formed in the 1960's, has taken over operation of the spillway, but has never had the title to the property transferred to its name. In years when the lake is threatening to exceed the set high water level mark, the HLWID allows water to flow through the spillway and into the sump where it then percolates into the Rathdrum Prairie aquifer. If spring runoff is too great, the sump cannot drain the water fast enough and excess waters from the spillway flood over onto IFI's property.

In the 1980s, HLWID sought to increase public access to the lake by adding a public beach and other improvements. IFI filed suit to quiet title and enjoin the actions of HLWID. HLWID filed an answer and third party complaint, claiming that the State owned the land. The State responded by asserting that the natural high water mark of the lake at the time of statehood was at 2,239 feet above msl and to the extent that navigable waters extended over IFI's property, the State claimed title to the property under the equal footing doctrine. The State further claimed the right to use the land under the navigable waters of Hayden Lake for the benefit of the public pursuant to the public trust doctrine.

This case first came before the Court in 1987, on appeal from the district court's grant of summary judgment to IFI. See *Idaho Forest Industries v. Hayden Lake Watershed Improvement District*, 112 Idaho 512, 733 P.2d 733 (1987). As to HLWID, this Court concluded there were no disputed issues of fact and that HLWID had no right to use the dike beyond the easement for a roadway over the top of the dike and the proposed expansion to include public beaches, docks and parking areas exceeded that easement. As to the rights asserted by the State, this Court analyzed the applicable doctrines as follows:

The equal footing doctrine grants legal title to the state in all lands below the natural high water mark of navigable waters as they existed at the date of admission into statehood. The public trust doctrine, on the other hand, does not grant title of such lands to the state but merely preserves inviolate the public's use of those lands.

While the public trust includes uses in addition to the navigation use, it is clear that the public trust arises only in land below the natural high water mark of *navigable* waters. There is no "public trust doctrine" relating to land which is wholly independent or unconnected with such navigable waters.

*Id.* at 516, 733 P.2d at 737. We reversed and remanded the case, finding that genuine issues of material fact existed as to whether the property was below the ordinary high water mark (OHWM) of the lake when Idaho was admitted to the Union and whether, by virtue of the periodic overflow of water onto IFI's property, there has been navigable water on the disputed property sufficient to result in some public trust rights.

On remand, the district judge, sitting without a jury, heard extensive evidence on the issue of the OHWM, including government survey information, the position of ponderosa pine trees, soil analysis results, and water level trends. On March 16, 1999, the district judge entered a judgment in favor of IFI. The district judge held that the State had failed to prove by a preponderance of the evidence that the land in question had been below the lake's 1890 OHWM; therefore, title to the property was quieted in IFI. The State appeals the district judge's decision.

## II.

## STANDARD OF REVIEW

 This Court will review a trial court's decision to ascertain "whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law." *Alumet v. Bear Lake Grazing Co.*, 119 Idaho 946, 949, 812 P.2d 253, 256 (1991). This Court does not set aside findings of fact unless they are clearly erroneous. *Marshall v. Blair*, 130 Idaho 675, 679, 946 P.2d 975, 979 (1997). Thus, if the findings of fact are supported by substantial and competent evidence, although conflicting, this Court will not disturb those findings. *Carney v. Heinson*, 133 Idaho 275, 281, 985 P.2d 1137, 1143 (1999). In reviewing a lower court's conclusions of law, this Court is not bound by the legal conclusions of the district court, but may draw its own conclusions from the facts presented. *Kootenai Elec. Coop. v. Washington Water Power Co.*, 127 Idaho 432, 435, 901 P.2d 1333, 1336 (1995).

## III.

## DISCUSSION

**A. The district judge correctly placed the burden of proof upon the State.**

 In this case, the district judge determined that the State had the burden of proof because it was alleging title to property in derogation of the rights claimed by IFI. The judge further held that the State's burden was "the usual 'preponderance of the evidence.'" On appeal, the State argues that since it claims to be holding the property in trust for the public, IFI should have had the burden of proof and should have been required to prove ownership by clear and convincing evidence.

 In support of its contention, the State relies upon this Court's decision in *Erickson v. State*, 132 Idaho 208, 970 P.2d 1 (1998). There we articulated the general rule that "[o]ne who would claim the ownership of property of which the legal title stands of record in another, or that the same is held by such person in trust for the one so claiming, must establish such claim by evidence that is

clear, satisfactory and convincing." *Erickson*, 132 Idaho at 211, 970 P.2d at 4 (quoting *Russ Ballard & F.A.I. v. Lava Hot Springs Resort, Inc.*, 97 Idaho 572, 579, 548 P.2d 72, 79 (1976)). In *Erickson*, this Court considered the claim of private landowners to property below the current OHWM of Lake Coeur d'Alene. The Court found there was a presumption that the State was holding the property in trust because it was located below the current OHWM of the lake. "Considering that the current OHWM of the Lake is 2128 feet, it is presumed that the State is holding the title to these lands in trust for the public." *Id.* at 211, 970 P.2d at 4. Since the State was presumed to be holding the property in trust for the public, the Ericksons were required to prove their title to the property by clear and convincing evidence. The factual and procedural differences between the present case and *Erickson*, however, lead us to a different result.

The presumption in *Erickson* was based upon the current OHWM of Lake Coeur d'Alene. Using dams located at Post Falls, the Washington Water Power Company has maintained the level of Lake Coeur d'Alene at 2128 feet above msl throughout the summer and into early fall of every year since 1907. The consistent maintenance of a single water level for over ninety years established a certain current OHWM, justifying the presumption the State was holding the property in trust. The same facts are not present in this case.

The hydrographs submitted by the State demonstrate that from the early 1920's, when gauge records were first kept, until 1950, Hayden Lake never reached the 2239 foot mark. From 1950 until the early 1960s the lake exceeded 2239 feet each year. The regular flooding of lakefront property resulted in the court order of 1962 under which the HLWID is supposed to regulate the high water level of Hayden Lake at 2239 feet. Regulating the water level, however, is not the same thing as maintaining the water level. The outlet controlled by HLWID only allows HLWID to keep the lake from exceeding 2239 feet; it does not give them the power to raise the level of the lake to 2239 feet. The State's own hydrographs even

show that from 1962 until 1987, the last year on which data was provided, Hayden Lake failed to reach the 2239 foot mark in twelve out of twenty-six years.

This case also differs from *Erickson* factually in another important respect. The area claimed by the Ericksons was generally under water, while the land claimed by IFI in this case is usually dry land. Because of these factual differences, there is no presumption that the State is holding the property in trust and *Erickson* is not controlling.

The procedural differences between *Erickson* and this case provide further reasons why *Erickson* is not controlling. In *Erickson* it was the record title holders who were affirmatively claiming that property presumptively being held in trust by the State was instead theirs. As such, we held that "[I]n bringing a quiet title action, the Ericksons had the burden of proof to establish that they held the title to the subject property." *Id.* at 211, 970 P.2d at 4. In the present case, as found by the district judge:

> because of the procedural process by which the State was brought into the case, the State is the party which is alleging that part or all of the property owned by IFI and the Richards lie below the ordinary high water mark of Hayden Lake as it existed on July 3, 1890. Therefore, it is the State which bears the burden of proof.

In this case, it is the State claiming ownership of land to which IFI has the record title. While the lawsuit was originally brought by IFI, the defendant HLWID brought in the State on a third party complaint and the State then asserted its rights to quiet title by way of a claim against IFI. Thus the current procedural posture of this case places the State in essentially the same place as the Ericksons were: asserting a claim of title to property against another. The State does not have the benefit of a presumption that the property is being held in trust and the district judge was correct in placing the burden of proof upon the State.

█ The district judge also determined the standard of proof for the State was a preponderance of the evidence because the protection of land held in public trust was not involved. The general rule, articulated previously, requires that claimants against a record title holder prove their claim by clear and convincing evidence. While we agree there may not be public trust issues since the land is not currently under water, the State is nevertheless asserting a claim of ownership of property whose legal title stands of record in another. Thus, the burden is on the claimant to prove its interest by evidence that is clear, satisfactory and convincing. While the district judge held the State to a different standard than we have articulated, that error is harmless for the purposes of this case. The State received the benefit of a lower standard, but as will be discussed hereafter, was not able to sustain even that lower burden.

**B. The district judge did not err in the basis used to determine the OHWM of Hayden Lake.**

█ The definition of OHWM is well established. The OHWM is "the line which the water impresses on the soil by covering it for sufficient periods to deprive the soil of its vegetation and destroy its value for agricultural purposes." I.C. § 58–104(9); *see also Erickson*, 132 Idaho at 210–211, 970 P.2d at 3–4; *Heckman Ranches, Inc. v. State*, 99 Idaho 793, 796, 589 P.2d 540, 543 (1979). In *Erickson*, this Court stated that "to prove the OHWM, evidence must be presented which establishes a specific line impressed upon the soil." 132 Idaho at 212, 970 P.2d at 5. The State argues the district judge erred in finding that:

> In cases where no evidence can be found which could support a finding of an actual line impressed in the soil on July 3, 1890, it is my conclusion that the true required finding of fact continues to be simply the "ordinary high water mark," which may be established by evidence that is unrelated to either soil or vegetation.

In making this finding, the district judge concluded that other evidence could be considered, so long as it comported with the statutory definition of OHWM. The district judge, while not making a finding as to the actual location of Hayden Lake's OHWM as of July 3, 1890, determined that it was located either at the dike or to the east of the

dike and was not located at 2239 feet above msl. The State's objection is that the district judge considered evidence which the State argues we have previously found non-probative in determining the OHWM. The State however, misinterprets our earlier holdings.

The focus of any inquiry into the OHWM of a lake must be evidence that tends to prove or define a line impressed upon the soil. *Erickson*, 132 Idaho at 211–12, 970 P.2d at 4–5. In the *Heckman* case, relied upon in *Erickson*, the Court stated:

The natural or ordinary high water mark of a river refers to a line impressed on the soil by the action of the water and contemplates a vegetation test as an aid in determining its location. In this context, whether the soil is valuable for agricultural purposes refers to the existence of vegetation and the soil's suitability for raising agricultural crops. Whether cattle could roam on the soil does not aid in determining the location of the natural or ordinary high water mark.

*Heckman*, 99 Idaho at 799, 589 P.2d at 546. While the presence of vegetation, the "vegetation test", is important in determining the OHWM, it is merely "an aid" in that determination; not the sole and exclusive means of proving the location of that line.

In any given case, some of the evidence will be direct and some will be indirect evidence of the existence of a line and the effect of water on the soil. However, the party with the burden of proving a claim to land up to the OHWM must present evidence that will support the finding of an OHWM at a particular elevation. In *Erickson* the plaintiffs failed to meet this burden. "Most all of the evidence presented by the Ericksons did not even specify a water level ... The only significant evidence of specific water levels presented by the Ericksons included the federal government survey and the evidence of dead tree stumps." *Erickson*, 132 Idaho at 212, 970 P.2d at 5. The Court then found that even these two pieces of evidence failed to prove where the water line actually was in 1890. The Court did not hold that the indirect evidence was non-probative or irrelevant. Indeed, the Court considered the testimony of the State's soil expert who

testified about the level of the lake around 1800 as reflected in the soils development. This Court simply concluded that the Ericksons had failed in their burden to prove where the OHWM, as it is defined by statute, was located.

The district judge, after analyzing very thoroughly the history of the "vegetation test", concluded as follows:

It is the conclusion of this Court that the vegetative definition of "ordinary high water mark," as judicially defined in Idaho cases beginning with *Raide v. Dollar*, supra, should be utilized only under circumstances where the conditions lend themselves to its applicability. In cases where no evidence can be found which could support a finding of an actual line impressed on the soil on July 3, 1890, it is my conclusion that the true required finding of fact continues to be simply the "ordinary high water mark," which may be established by evidence that is unrelated to either soil or vegetation.

We find no error in the district judge's analysis of the proper means of determining the OHWM.

## C. Substantial And Competent Evidence Supports The Findings Of The District Judge.

At the trial, both parties submitted extensive evidence. The State presented the testimony of a soil expert who claimed the land west of the dike had typically been inundated with water before the dike was constructed. IFI countered with an expert who claimed the land west of the dike had been typically dry during that time. The district court found the testimony of the two experts "ended in a tie."

The State presented evidence of high water marks from other locations on the lake. The elevations of these marks extended to a height of 2241.19 feet above msl. However, the State also claimed that Ponderosa pine trees cannot grow below the OHWM of a lake. One of the pine trees the State used as evidence to show a line of vegetation was a Ponderosa pine tree dating from the time of statehood located at 2239.87 feet above msl. Given the State's own evidence, we cannot find the district judge's refusal to rely upon

**322**

the State's claimed OHWM from 1890 as clearly erroneous. As to the location of the pine trees, the district judge correctly observed that according to the State's evidence, the trees show only that the OHWM could not have been above 2239 feet at statehood, not that it was actually at that location.

The district judge found that the high water level at the time the dike was built was somewhere below 2239 feet above msl. The evidence clearly supports this finding. The evidence also supports the district judge's determination that this level was obtained as a result of increasing water levels from increased runoff due to logging and the plugging of a whirlpool that drained the lake before it was dynamited closed. The State presented contradictory evidence, but it is the trial court's and not this Court's job to weigh the conflicting evidence. Thus we find that the district judge's findings of fact are supported by substantial and competent evidence.

### IV.

### CONCLUSION

For the reasons stated above, we affirm the judgment of the district court quieting title in favor of IFI. We award costs to respondents.

Justices SILAK, SCHROEDER, WALTERS and KIDWELL concur.