137 P.3d 409

**INDEPENDENCE LEAD MINES COMPANY, an Arizona corporation, Plaintiff–Appellant,**

v.

**HECLA MINING COMPANY, a Delaware corporation, Defendant–Respondent.**

**No. 31042.**

Supreme Court of Idaho, Boise, February 2006 Term.

April 24, 2006.

Rehearing Denied June 29, 2006.

Marcus, Christian & Hardee, LLP, Boise, for appellant. Michael R. Christian argued.

Hawley, Troxell, Ennis & Hawley, LLP, Boise, for respondent. John F. Kurtz Jr. argued.

TROUT, Justice.

This case involves a contract dispute between appellant Independence Lead Mines Company (Independence) and respondent Hecla Mining Company (Hecla) relating to Hecla's operations on mining claims it leased from Independence. Independence appeals the district court's determinations that Hecla did not materially breach any express provisions of the contract and that Hecla did not commit waste. Because we agree with the district court's reasoning in its entirety, we affirm the district court's decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

*The Contract*

In 1968, a lease agreement was entered into between Independence and two other parties, the claim owners, and Hecla, a mine operator. Hecla subsequently acquired the contract interest of the two other parties. Under the contract, Independence leased land containing the Gold Hunter deposit, which was situated one mile north of Hecla's Lucky Friday mine in northern Idaho, to Hecla for the purposes of exploration, development and mining of Gold Hunter. The individuals involved in negotiating the lengthy contract were experienced lawyers and business people familiar with mining contracts and very knowledgeable in the mining industry.

According to the contract, Hecla is to explore, develop and mine Gold Hunter at its sole cost and expense, utilizing Hecla's existing Lucky Friday facilities—the only mine that could practically develop any potential ore deposit associated with Gold Hunter. Hecla is entitled to recoup all of its expenses incurred in exploring, developing and mining, and only after those expenditures are recovered from the profits derived from the sale of

the minerals is the balance to be distributed among the parties. Because Hecla has obtained the interest of the two other claim owners, Hecla is now entitled to a total of 81.48% of the net profits after recoupment and Independence is entitled to 18.52%. The contract contains no language conditioning exploration and development by Hecla on the actual production of net profits, nor is there any guarantee that net profits will be generated under the contract.

As far as mining operations are concerned, the contract vests Hecla with the exclusive right to manage the mining operation: "IT IS UNDERSTOOD AND EXPRESSLY AGREED THAT Hecla's decisions with respect to the character of work to be performed by Hecla under the term of this Agreement shall be final, and Hecla shall have the exclusive right to manage, control and operate the [properties] covered by this Agreement." Article IV requires Hecla to engage in an initial work program at the 4050–foot level of Gold Hunter. In Article IV, the parties agreed Independence "shall be consulted and expected to offer suggestions and advice." The contract also requires Hecla provide Independence with monthly progress reports showing the character and amount of work performed by Hecla during the preceding calendar month.

*Mining Gold Hunter*

After some exploratory drilling in the 1970s, little occurred in the way of serious development of Gold Hunter until the 1990s, at which time interest in developing Gold Hunter was rekindled. In May 1997, Hecla's managers presented a feasibility study summary report to Hecla's board of directors in support of a request for development of Gold Hunter. The report was based on proven and probable "reserve" (reliable quantity and quality of minerals) and anticipated "resource" (less reliable, possibly speculative, quantity and quality of minerals) estimates over the twelve-year life of the mine. The report identified 3.5 million tons of ore in Gold Hunter, 668,770 of which were deemed "reserves" and 2.68 million tons of which were the less reliable "resources." The anticipated 36% return on the investment was

calculated using projected metal prices of $5.46 per ounce for silver, $0.33 per pound for lead, and $0.61 per pound for zinc throughout the life of the mine. Based on management's projections of mineral prices and the extent of the deposit, the board of directors decided to proceed with the project and approved $16 million to put Gold Hunter into production. By June 1998, Hecla was engaged in full production at the 4900–foot level of Gold Hunter.

While the grade and quality of the Gold Hunter deposit was good, during the first five years of the project the price of silver averaged $5.00 per ounce and lead $0.22 per pound, rather than the projected metals prices of $5.46 and $0.33, respectively. Realizing the price projections set forth in the study were wrong, Hecla began occasionally reducing production but did not shut down the mine for various reasons. By October 2003, the unrecouped costs of the project were over $33 million. Eventually, Hecla had mined out the 4900–foot level of the deposit and was pursuing plans to develop Gold Hunter at the 5900–foot level.

*The District Court*

Independence, concerned its assets were being depleted, filed a complaint in June 2002. Independence claimed Hecla should not have commenced mining operations until metal prices had increased to the point that net profits could be generated. Independence argued the 1997 feasibility study was inadequate and Hecla breached its implied prudent mining operator covenant by (1) undertaking the project even though it should have known the project would not be profitable and (2) continuing to pursue the project when it proved to be unprofitable. Independence also argued Hecla materially breached an express provision of the contract by its failure to consult with Independence before undertaking operations at the 4900–foot level. Finally, Independence asserted Hecla committed the tort of waste against Gold Hunter.

After a trial, the district court made extensive factual findings and concluded there was no basis for finding any breach of an express or implied provision of the contract. Also,

the court decided that in light of Independence's failure to show Hecla acted in bad faith or that Hecla did not operate the mine in a reasonably prudent manner, the claim for waste must be dismissed. The district court entered judgment for Hecla and Independence timely appealed.

## II. STANDARD OF REVIEW

The review of a trial court's decision after a court trial is limited to ascertaining "whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law." *Idaho Forest Industries, Inc. v. Hayden Lake Watershed Imp. Dist.*, 135 Idaho 316, 319, 17 P.3d 260, 263 (2000). The trial court's findings of fact will not be set aside unless clearly erroneous. *Id.; see* I.R.C.P. 52(a). Thus, if the findings of fact are supported by substantial and competent evidence, even if the evidence is conflicting, this Court will not disturb those findings. *Idaho Forest Industries, Inc.*, 135 Idaho at 319, 17 P.3d at 263. In view of the trial court's role to weigh conflicting evidence and testimony and to judge the credibility of witnesses, the trial court's findings of fact will be liberally construed in favor of the judgment entered. *Sun Valley Shamrock Resources, Inc. v. Travelers Leasing Corp.*, 118 Idaho 116, 118, 794 P.2d 1389, 1391 (1990). In reviewing a trial court's conclusions of law, however, a different standard applies: this Court is not bound by the legal conclusions of the trial court, but may draw its own conclusions from the facts presented. *Idaho Forest Industries, Inc.*, 135 Idaho at 319, 17 P.3d at 263.

The interpretation of a contract begins with the language of the contract itself. *Albee v. Judy*, 136 Idaho 226, 230, 31 P.3d 248, 252 (2001). If the terms of the contract are clear and unambiguous, the meaning and legal effect of the contract are questions of law which must be determined from the plain meaning of the words used. *Id.* If, however, the contract is deemed to be ambiguous, the interpretation of the contract document is a question of fact which focuses on the intent of the parties. *Id.* "Whether the facts establish a violation of the contract is a question of law over which this Court exercises free re-

view." *Opportunity, L.L.C. v. Ossewarde*, 136 Idaho 602, 606, 38 P.3d 1258, 1262 (2002).

## III. DISCUSSION

The principal issue is whether there has been a breach of the contract between Independence and Hecla. To determine whether there has been a breach of an implied provision, this Court must consider whether an implied term characterized as a "duty to operate prudently" exists and, if so, whether such an implied duty would be contrary to the express terms of the contract. To determine whether there has been a breach of an express provision in the contract, we will review the contract term addressing Hecla's duty to consult. Finally, this Court will review Independence's claim for waste.

### A. Breach of Implied Term

"It is well settled that a contract includes not only that which is stated expressly, but also that which is ... implied from its language." *Star Phoenix Min. Co. v. Hecla Min. Co.*, 130 Idaho 223, 231, 939 P.2d 542, 550 (1997) (quoting *Commercial Insurance Co. v. Hartwell Excavating Co.*, 89 Idaho 531, 541, 407 P.2d 312, 317 (1965)). The covenant of good faith and fair dealing may be implied, however, if it arises only regarding terms agreed to by the parties, and requires that the parties perform, in good faith, the obligations imposed by their agreement. *Lettunich v. Key Bank Nat. Ass'n*, 141 Idaho 362, 368, 109 P.3d 1104, 1110 (2005). The covenant of good faith and fair dealing cannot override an express provision in the contract. *See Clement v. Farmers Ins. Exchange*, 115 Idaho 298, 300, 766 P.2d 768, 770 (1988); *First Security Bank of Idaho v. Gaige*, 115 Idaho 172, 176, 765 P.2d 683, 687 (1988) ("There is no basis for claiming implied terms contrary to express rights contained in the parties' agreement."). In fact, "[n]o covenant will be implied which is contrary to the terms of the contract negotiated and executed by the parties." *Idaho Power Co. v. Cogeneration, Inc.*, 134 Idaho 738, 750, 9 P.3d 1204, 1216 (2000). To the extent the covenant of good faith and fair dealing does apply, this Court has rejected "the amorphous concept of bad faith as the

standard for determining whether the covenant has been breached." *Metcalf v. Intermountain Gas Co.*, 116 Idaho 622, 627, 778 P.2d 744, 749 (1989). Instead, "the covenant is an objective determination of whether the parties have acted in good faith in terms of enforcing the contractual provisions." *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 243, 108 P.3d 380, 390 (2005). An objective determination can only be made by considering a party's reasonableness in carrying out the contract provisions.

Independence claims that, under the *Alumet* line of cases, Hecla was under a duty to not mine at times when it was not reasonable and prudent to mine. *See Alumet v. Bear Lake Grazing Co.*, 112 Idaho 441, 732 P.2d 679 (Ct.App. 1987) (*Alumet I* ); *Alumet v. Bear Lake Grazing Co.*, 119 Idaho 979, 812 P.2d 286 (Ct.App. 1989) (*Alumet II* ); *Alumet v. Bear Lake Grazing Co.*, 119 Idaho 946, 812 P.2d 253, 257 (1991) (*Alumet III* ). In *Alumet I*, the Idaho Court of Appeals was confronted with a lessor mine owner claiming the lessee mine operator had inadequately developed a phosphate mine. The Court of Appeals discussed the duty to mine in situations where the lessee failed to do so and concluded the lease contained an implied covenant "to develop and actively mine." 112 Idaho at 446, 732 P.2d at 684. On the second appeal in *Alumet II,* the Court of Appeals discussed the lessee's duty in general terms, such as "to conduct operations as a reasonably prudent operator," but at all times it was referring to the implied covenant to actively mine. *See* 119 Idaho at 983, 812 P.2d at 290. Finally, in *Alumet III,* this Court observed the *Alumet I* court's finding that the lease agreement between the parties contained an implied covenant to actively mine was binding, as "[t]he time for appeal on this issue has long passed and it is, therefore, res judicata as to the implied covenant to mine *in this particular case.*" 119 Idaho at 950, 812 P.2d at 257 (emphasis added). In the portion of its opinion entitled "Duty of Lessee Under an Implied Covenant to Develop and Mine," the *Alumet III* Court discussed the duty in very general terms. *See id.* at 950–51, 812 P.2d at 257–58.

The *Alumet* cases do not support Independence's assertion that Hecla had a duty to stop mining, where the entire contract is drafted to leave with Hecla the control over when and how to mine. Aside from the obvious fact that *Alumet* is not on point because this is not a "duty to mine" case—indeed, this is a "duty not to mine" case—a fair reading of *Alumet III* shows this Court was not actually announcing a new duty but was instead simply applying the well-established implied duty of good faith and fair dealing that this Court has articulated in numerous cases over the years. This implied duty of good faith and fair dealing that may require a party to act reasonably in operating a mine should be analyzed like any other implied duty. That is, it may not be applied to override an express provision of the contract. *See First Security Bank of Idaho,* 115 Idaho at 176, 765 P.2d at 683.

In this case, Independence's interpretation of what constitutes good faith and fair dealing is that Hecla must cease mining when metal prices drop below that which is necessary to guarantee Independence a profit. Nevertheless, the contract expressly provides Hecla has the exclusive right to manage, control and operate Gold Hunter, and that all decisions made by Hecla "shall be final." To imply a provision requiring Hecla to place Gold Hunter on care and maintenance status because the mine is not profitable to Independence when Hecla determines this should not be done is to contradict the exclusive authority vested in Hecla. Thus, the implied provision that Hecla must stop mining should not be applied because it contradicts an express term of the contract.

But even if the implied the covenant of good faith and fair dealing did not contradict an express term of the contract, the district court's determination Hecla did not breach that covenant was supported by substantial and competent evidence, as shown below.

*1. Whether the initial decision to mine was reasonable.*

Hecla's decision to undertake production at the 4900–foot level of Gold Hunter was based on the 1997 report presented to Hecla's board of directors. Independence

claims that decision breached Hecla's implied duty because the report on which it was based was flawed. Specifically, Independence takes issue with Hecla management's price projections and determinations as to the size and quality of the Gold Hunter deposit. The district court found that though a retrospective analysis of the feasibility study revealed certain deficiencies in geological and financial data, when taken as a whole, the study was prepared in accordance with customary industry practice and standards. As to the price projections, Hecla's expert testified the projections made by Hecla were similar to the price projections made by Merrill Lynch, Salomon Brothers, Smith Barney, the Silver Institute, Lehman Brothers, and Coeur d'Alene Mines for the same time period. With regard to the geological data, Hecla's expert testified it was very common in the mining industry to make decisions based on materials other than "proven and probable reserves" because it is simply too expensive to do all the underground work necessary to prove estimated resources actually exist, especially in the "vein type deposits" found in Gold Hunter. Given a reviewing court's deference to a district court's findings related to the credibility of witnesses and weight of the evidence, we conclude the district court's finding Hecla acted reasonably was supported by substantial and competent evidence.

2. *Whether the decision to continue mining was reasonable.*

 Despite the low metals prices during the first five years of the Gold Hunter project, Hecla continued to mine the 4900–foot level. At the time of trial, the 4900–foot level was "mined out" and Hecla began pursuing plans to undertake production at the 5900–foot level. Hecla defends its decision to continue mining because (1) while the project was not generating profits, it was generating cash flow; (2) shutting down the mine would negatively impact the community and make it difficult to find employees when the decision to reopen was made; and (3) the process involved with reopening the mine could take up to 18 months, at which time volatile metal prices might drop again. Hecla's strategy was to continue mining Gold Hunter so long as any cash loss was less than the estimated holding, or care and maintenance, costs. There was testimony at trial that the care and maintenance costs could reach $1.8 million annually. Based on this evidence, the district court correctly determined Independence failed to carry its burden of showing Hecla did not act fairly and in good faith.

**B. Breach of Express Term**

 A breach of contract is non-performance of any contractual duty of immediate performance. *Idaho Power Co.,* 134 Idaho at 746, 9 P.3d at 1212. It is a failure, without legal excuse, to perform any promise which forms the whole or part of a contract. *Id.* "A substantial or material breach of contract is one which touches the fundamental purpose of the contract and defeats the object of the parties in entering into the contract." *Ervin Const. Co. v. Van Orden,* 125 Idaho 695, 699, 874 P.2d 506, 510 (1993). Whether a breach of contract is material is a question of fact. *Id.* at 700, 874 P.2d at 511.

 Independence contends Hecla materially breached its "duty to consult with Independence." Specifically, Independence argues the duty to consult was not limited to the initial work program described in Article IV. Again, Article IV addresses the initial work program and includes the following agreement:

> [T]he location and extent of any of the laterals, crosscuts, drifts or other openings and the location and extent of any diamond drilling [related to the work program] may be modified at the option of Hecla. It is understood, however, that the Property Owners' geologists and engineers shall have the right to inspect the work being performed by Hecla under this Agreement and shall be consulted and expected to offer suggestions and advice with respect thereto.

Independence asserts the "under this Agreement" language means Hecla must consult with Independence regarding *all* of the work Hecla performs pursuant to the contract. By not seeking advice before mining out the 4900–foot level, Independence contends, Hecla materially breached its duty to consult.

We find Independence's argument unpersuasive for two reasons. First, the word "however" used in the excerpt above shows the right to consult refers to "the work being performed by Hecla under this Agreement" that was specified in the first sentence, i.e., the location and extent of the laterals, cross-cuts, etc. Second, the contract vests Hecla with the exclusive right to operate and manage the project. Had the parties intended Independence to have the right to veto Hecla's operational decisions, surely they would have included language stronger than a mere duty to "consult." Instead, the contract states simply that Independence is to be consulted and "expected to offer suggestions and advice"; the contract does not require Hecla follow any suggestions or advice offered by Independence. We agree with the district court's factual finding that Hecla did not materially breach an express provision of the contract when it did not consult with Independence prior to commencing the project, especially as Hecla does not appear to have been bound by Independence's input.

## C. Waste

■ Idaho Code section 6–201 provides, "If a guardian, tenant for life or years, joint tenant or tenant in common of real property, commit[s] waste thereon, any person aggrieved by the waste may bring an action against him therefor, in which action there may be judgment for treble damages." The tort of waste is defined as an "[a]ction or inaction by a possessor of land causing unreasonable injury to the holders of other estates in the same land." Black's Law Dictionary 1589 (6th ed. 1990). Independence asserts the facts establishing Hecla acted imprudently and in bad faith also establish Hecla wasted the Gold Hunter deposit. Because we agree with the district court that Hecla did not act unreasonably or in bad faith, Independence's argument fails. Furthermore, Independence's waste claim is grounded on the consequences contemplated by the contract in allowing Hecla the exclusive right to make decisions to mine the property. Although it is clear mining Gold Hunter was not generating the profit that Independence desired, it is nevertheless, the activity contemplated by the contract. Un-

der these facts, it is difficult to see how Hecla can commit waste against Gold Hunter by doing that which it contracted to do: extract minerals from Gold Hunter.

## D. Attorney Fees on Appeal

■ Both parties request attorney fees on appeal pursuant to I.C. § 12–120(3). Independence is not entitled to them because it is not the prevailing party and Hecla fails to present any argument justifying an award of attorney fees. In fact, Hecla does not even state it *is* entitled to attorney fees, but only states in its "Additional Issues on Appeal" portion of its brief, "[W]hether Hecla is entitled to an award of attorney fees on appeal based upon Idaho Code § 12–120(3)." This Court has denied attorney fees on appeal where

> neither party addressed the issue in the argument section of their briefs as required by I.A.R. 35(a)(6), which requires the argument portion of the brief to "contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes, and parts of the transcript and record relied on."

*Weaver v. Searle Bros.,* 131 Idaho 610, 616, 962 P.2d 381, 387 (1998); *see also Bream v. Benscoter,* 139 Idaho 364, 369–70, 79 P.3d 723, 728–29 (2003) (noting if a party seeks attorney fees under I.C. § 12–120(3), "the party should, to the extent necessary, provide facts, authority, and argument supporting the claim that the case involves a 'commercial transaction' and that such transaction is the gravamen of the lawsuit"). Thus, we do not award fees to either party on appeal.

## IV. CONCLUSION

The decision of the district court dismissing Independence's claims is affirmed. In this case, the implied duty to act reasonably and in good faith could not require Hecla to cease mining, as doing so would contradict an express provision of the contract. Furthermore, even if such a duty were implied, Independence has failed to carry its burden of showing Hecla breached that duty. Also,

we agree with the district court's determination Hecla did not materially breach an express provision of the contract. Finally, we conclude Independence's waste claim fails because Hecla has not unreasonably injured the Gold Hunter deposit. We award costs on appeal to Hecla.

Chief Justice SCHROEDER and Justices EISMANN, BURDICK and JONES concur.