379 P.2d 428

H. H. CONKLIN, Plaintiff-Respondent,

v.

John H. PATTERSON, K. D. Ogden and Franklin David, Defendants-Appellants.

No. 9066.

Supreme Court of Idaho.

March 1, 1963.

Roberts & Poole, Anderson, Kaufman & Anderson, Howard Humphrey, Boise, for appellants.

Gigray & Boyd, Caldwell, for respondent.

**334**

TAYLOR, Justice.

In March, 1957, the defendants (appellants) were directors, and Ogden and Patterson were president and vice-president, respectively, of the National Life and Health Corporation of America. The corporation had recently been organized and was engaged in raising capital required to obtain a license from the state to commence business as an insurance company. The capital was being accumulated from proceeds of sales by the corporation of shares of its capital stock.

Defendant Patterson, living at Caldwell, suggested to the plaintiff (respondent) that he purchase shares in the company. Plaintiff responded that he did not desire to purchase stock at that time. After some negotiation, it was agreed that plaintiff would loan $5,000 to defendants for use in the promotion of the enterprise. The terms and conditions were set forth in a promissory note, signed by the defendants, as follows:

"NON–NEGOTIABLE

"$5000.00                                                                March 16, 1957

90 days after date, upon demand, for value received, the undersigned promise to pay to the order of H. H. Conklin Five Thousand and no/100 Dollars in Lawful Money of the United States of America, at Caldwell, Idaho, with interest thereon from date at the rate of 8% per cent per annum, payable at maturity, and if not paid at maturity and this note be placed with an attorney for collection, or if suit be instituted for is collection, I, we, or either of us, agree to pay in either case reasonable attorney's fees. The makers, sureties, guarantors and endorsers hereof severally waive presentment for payment, protest, notice of protest and of nonpayment of this note. If the interest on this note is not paid at the time it becomes due, the holder of this note at its option may declare the principal due and payable.

Due 90 days after date upon demand.        /s/  John H. Patterson, M.D
(This is a conditional note, see reverse     /s/  K. D. Ogden
side for provisions.)                                 /s/  F. David

"[Reverse side]  This note at the option of the holder may be transferred to National Life and Health Corporation of America at any time within one (1) year from date for one thousand (1,000) units of common stock of National Life and Health Corporation of America. Said units consist of one (1) share of Class A common stock and four (4) shares of Class B common stock."

The money evidencing the loan was paid to the corporation a few days before the execution of the note by means of plaintiff's personal check, which was as follows:

"Mr. or Mrs. H. H. Conklin                                            No. ——
Route No. 2
                              Caldwell, Idaho, 3/11/57              92–50
                                                                    ————
                                                                     1241
Pay to the order of National Life & Health              $5000.00
Five Thousand and no/100 ---------------------------------Dollars
* * * The First National Bank of Caldwell,
Caldwell, Idaho                                        /s/ H. H. Conklin"

The corporation's receipt for the money was dated March 15, 1957, and was as follows:

"Receipt                    Date 3/15/57              No. 3898
Received from Mr. or Mrs. H. H. Conklin
Address Route 2 – Caldwell, Idaho
Five Thousand Dollars                                 $5000.00
For 1000 shares Class A and 4000 Shares Class B
* * *                                        Nat'l Life & Health Corp.
                                             By /s/ S. Barningham"

————◆————

The carbon copy of the receipt, marked "Defendant's Exh. G", appearing in the receipt book of the corporation, offered in evidence, was rejected on the ground that the consideration for the note in suit was admitted. However, the receipt was material to show the date on which the money was received and from whom. On the same day, March 15, 1957, the corporation issued its certificate No. 300 to "Mr. or Mrs. H. H. Conklin" for 5000 shares of its capital stock—1000 Class A and 4000 Class B. However, the certificate was not immediately delivered.

Plaintiff testified that at the end of the ninety-day period mentioned in the note, he called Patterson and asked him what he wanted to do about the note; that Patterson said that if plaintiff did not need the money immediately he, Patterson, would like to use it a little longer; and that shortly after such telephone conversation he, plaintiff, received the certificate for the stock, presumably by mail, but he did not know who sent it to him.

Patterson testified he did not know when the stock certificate was delivered, but discovered it had been delivered when he was

going over the records near the end of 1957, for the purpose of preparing the corporation report to the state for that year.

At the close of the evidence the court granted plaintiff's motion for a directed verdict and entered judgment thereon in favor of plaintiff and against the defendants, as prayed. Defendants' subsequent motion for a new trial was denied and this appeal was brought from the judgment and the order denying a new trial.

■ The sole question presented is the sufficiency of the evidence to present an issue of fact for determination by the jury.

"The motion for a directed verdict admits the truth of all the evidence in favor of the defendants and every inference of fact that may legitimately be drawn therefrom (Moody v. Morris-Roberts Co., 38 Idaho 414, 226 P. 278), and should have been denied unless there was no evidence material to the defense on any question of fact about which reasonable minds might differ, which, if found in favor of the defendants would have supported a verdict for them. Pocatello Security Trust Co. v. Henry, 35 Idaho 321, 206 P. 175, 27 A.L.R. 337; Keane v. Pittsburg Lead Min. Co., 17 Idaho 179, 105 P. 60." McCornick and Co. v. Tolmie Bros., 42 Idaho 1, 6, 243 P. 355, 357.

Koser v. Hornback, 75 Idaho 24, 265 P.2d 988, 44 A.L.R.2d 1015; Nissula v. Southern Idaho Timber Protective Ass'n, 73 Idaho 37, 245 P.2d 400; Quinn v. Hartford Accident & Indemnity Co., 71 Idaho 449, 232 P.2d 965; Clay v. Rossi, 62 Idaho 140, 108 P.2d 506; Allan v. Oregon Short Line R. Co., 60 Idaho 267, 90 P.2d 707.

Viewing the evidence, and the legitimate inferences to be drawn therefrom, in the light most favorable to defendants, the record reveals the following facts. Plaintiff knew he was loaning the money to or for the use and benefit of the corporation; that defendants, in executing and delivering to him their note for the amount of the loan, were acting as promoters of, and for the use and benefit of, the corporation; that he held an option for one year from the date of the note to transfer the note to the corporation for 5000 shares of its stock; and that when he received the stock ninety days after the date of the note, it was tendered to him for the money loaned. Plaintiff testified he made demand on the note at the end of the ninety-day period. In this he was supported by the testimony of his wife. In conflict with this the three defendants each testified that no demand had been made for payment of the note until some time in 1960, when they received such a demand by mail from plaintiff's counsel. The plaintiff did not transfer the note to the corporation, but retained possession of

it. He also retained possession of the stock certificate from the time he received it after the end of the ninety-day period in 1957, until he produced it at the trial in April, 1961. He exercised rights of ownership over the stock in the interim. He and his wife attended a stockholders' meeting in 1958, and plaintiff executed a proxy to defendant Patterson to be used at the annual stockholders' meeting in January, 1959. In regard to the proxy, its offer in evidence was rejected on the ground that proof of the plaintiff's signature had not been made. However, Mrs. Conklin testified that it appeared to be or could have been her husband's signature, and in response to defendants' request to reopen the case for the proof of the signature, the court advised counsel that his ruling on the motion for directed verdict would be for plaintiff, assuming the signature was established.

Plaintiff visited the office of the corporation in Boise on numerous occasions during the years 1957, 1958, and 1959, and on numerous of those occasions talked with defendant Patterson in regard to the business and prospects of the corporation. On at least one of these occasions plaintiff was advised that the market price of the stock had reached $1.20 to $1.30 per share and that he could sell his stock and realize therefrom more than his $5000 principal and the interest. Patterson testified that during the years mentioned the market price of the stock never went below $1.00 and that at one time it "approached $4.00"; that in April, 1960, when a court order for the "rehabilitation" of the corporation was entered, the market value of the stock dropped to "nothing"; and that it was after this event that plaintiff demanded payment of the note.

The defendants do not contend that plaintiff exercised the option, given to him by the terms of the note, by transfer of the note to the corporation. Rather, they contend that the plaintiff agreed to, and did, receive and accept the stock of the corporation in satisfaction of the obligation represented by the note; that is, that there had been an accord and satisfaction. Plaintiff contends that the defense of accord and satisfaction was not pleaded and that it was not supported by the evidence. Defendants' pleading in that respect is as follows:

" * * * that plaintiffs accepted five thousand shares of the Unit Common Stock of National Life and Health Corporation of America in payment, discharge and satisfaction of defendants' obligation to plaintiff upon the promissory note sued upon by plaintiffs.

" * * * that plaintiff accepted the delivery of said stock in satisfaction of the obligation of National Life and Health Corporation of America and of the defendants to repay said $5000.00."

**338**

The plea of accord and satisfaction is to be liberally construed, and will be upheld if it embodies the legal elements of that defense. 1 C.J.S. Accord and Satisfaction § 47c(1). Such essential elements, so far as here concerned, are an agreement between plaintiff, defendants and the corporation that the plaintiff would accept the stock of the corporation in satisfaction of the obligation represented by the note, and the delivery by the corporation to the plaintiff of the stock and its acceptance by the plaintiff as and for full satisfaction of defendants' obligation on the note. Under the rule stated, the defense was sufficiently pleaded. White v. Village of Soda Springs, 46 Idaho 153, 266 P. 795; Frame v. State ex rel. Commissioner of Land Office, 196 Okl. 292, 164 P.2d 865; 1 C.J.S. Accord and Satisfaction §§ 1, 3, 6, 12 and 20. It is not essential that the claim discharged by accord and satisfaction be in dispute or controversy, such being a characteristic of compromise and settlement. 1 C.J.S. Accord and Satisfaction § 2.

Accord and satisfaction is also distinguished from payment. In the case of payment the obligation is discharged by compliance with the original agreement according to its terms; while in accord and satisfaction the discharge is effected by compliance with other terms than those originally agreed upon. 1 Am.Jur.2d, Accord and Satisfaction, § 2. Stone v. Webster, 65 Idaho 392, 144 P.2d 466. Here the terms of the option were not complied with by transfer of the note to the corporation.

As stated in Stone v. Webster, supra, the burden of proving accord and satisfaction is upon the party relying thereon.

It is not to be inferred that the jury would have found the facts as we have outlined them herein. We have viewed the facts and inferences to be drawn therefrom in the light most favorable to defendants, as we are required to do in considering the action of the court in directing a verdict against them. When the foregoing facts are considered in that light, together with the long period of time—approximately two years—during which the plaintiff retained possession of the stock certificate, exercising proprietorship thereof, after the period of his option had expired, the issue of accord and satisfaction was sufficiently supported to require its determination by the jury.

The judgment is reversed and the cause is remanded with instructions to grant a new trial.

Costs to appellants.

KNUDSON, C. J., and McQUADE, McFADDEN and SMITH, JJ., concur.