65 P.3d 519

Lilas McCOLM–TRASKA, as Personal Representative of the Estate of Hester Mary Lenox–McColm, deceased, Plaintiff–Appellant,

v.

VALLEY VIEW, INC., an Indiana Corporation, Defendant–Respondent,

and

Does 1–5, the true identities of which are currently unknown to Plaintiff at this time, Defendants.

No. 28169.

Supreme Court of Idaho, Boise, January 2003 Term.

March 7, 2003.

Troupis & Summer, Chtd., Meridian, for appellant.

Quane Smith, LLP, Boise, for respondent.

KIDWELL, Justice.

Lilas McColm–Traska (Traska) brought suit against Valley View, Inc. (Valley View), on behalf of Hester Mary Lenox–McColm (McColm) alleging, in the alternative, negligence and breach of contract. The district court granted summary judgment in favor of Valley View. Traska appeals. We remand for further proceedings.

## I.

## FACTS AND PROCEDURAL BACKGROUND

McColm lived in a nursing home run by Valley View. On June 7, 1997, McColm fell and injured herself as the result of alleged negligence of a Valley View employee. Due to McColm's injuries, her healthcare costs and living expenses increased.

On August 1, 1997, Traska, McColm's daughter with power of attorney, contacted Valley View's insurer, CNA, and spoke with Judith Mueller (Mueller). Traska asked CNA to pay the increase in McColm's healthcare expenses resulting from her fall. Traska alleges that Mueller admitted Valley View was responsible for McColm's fall and that Mueller agreed to pay the increase in McColm's expenses resulting from the fall.

Beginning in December 1997, CNA began paying the increase in McColm's healthcare expenses. McColm continued to pay Valley View $1990.00 per month, plus the cost of her prescription drugs, as she had before she fell. CNA, however, covered any expenses owed Valley View in excess of $1990.00 per month, excluding charges for prescription drugs.

In June 1998, CNA stopped paying McColm's excess healthcare expenses. Traska contacted CNA and spoke with Mueller. Mueller said the payments stopped because CNA believed McColm's increased health care expenses no longer resulted from her June 1997 fall. Traska objected. As a result of the conversations between Mueller and Traska, McColm underwent a mental evaluation. Traska sent the result of the evaluation to Mueller. Thereafter, CNA resumed payments.

In September 1998, CNA again stopped paying McColm's additional expenses. Traska contacted Douglas Baker (Baker), a local attorney, and asked him to contact CNA. Baker contacted CNA and payments resumed. The payments continued regularly until June 7, 1999, the day the statute of limitations barred McColm from filing suit for damages stemming from her fall.

On July 10, 2000, McColm filed suit against Valley View alleging negligence and breach of contract. Shortly thereafter, McColm died. An amended complaint was filed on November 13, 2000, listing Traska as the plaintiff in her capacity as the personal representative of McColm's estate. The substantive allegations of the complaint remained unchanged.

On October 15, 2001, Valley View filed a motion for summary judgment and the affidavit of Tyra H. Stubbs (Stubbs). A transcript of Traska's deposition was attached to Stubbs's affidavit. During the deposition, Traska stated that she or McColm:

paid $1990.00 per month. We paid all of the drugs. This was the agreement that Ms. Mueller and I struck because she said, well, your mother would have to pay some living expenses somewhere. I said, "She is in a nursing home because of that fall," and she wanted to know if we were going to sue and I said, "No, Mother doesn't want to sue. She doesn't want the bus driver to get in trouble," but anything over and above what would be her normal living expenses, since she has to have nursing home care, should be [CNA's] expense, and [Mueller] agreed.

In response to Valley View's motion and Stubbs's affidavit, Traska filed an affidavit. Traska's affidavit stated:

8. On August 1, 1997, I spoke with Judith Mueller, a representative of CNA about payment of mother's medical expenses and the increased cost of her care. Ms. Mueller acknowledged that Valley View's bus driver had been negligent and that CNA as Valley View's insurer had a responsibility to pay for my mother's expenses. She assured me that she would accept that responsibility and pay the bills.

9. Thereafter, the bills were paid by CNA for several months. In December 1997, I again spoke with Judith Mueller and we agreed that we would split my mother's living expenses and medical expenses. I agreed to pay $1,990 per month, which is the amount we had been paying for her care at Valley View, Inc., and all of her prescription drug charges. CNA agreed to pay all expenses over and above these sums, indefinitely, until mother's situation changed. The reason for this agreement

was that my mother needed more expensive care following the accident. . . .

10. In June, 1998, CNA stopped paying the bills and I contacted Ms. Mueller again. She said CNA felt that my mother should have recovered by now. I told [Mueller that mother] had not and we got a mental evaluation of my mother which I believe was sent to Ms. Mueller, because, thereafter CNA started paying the bills again.

The district court heard Valley View's motion on November 15, 2001. On November 19, 2001, the court filed an order regarding summary judgment and ordering further briefing (first order). In its first order, the court granted partial summary judgment. It found that McColm's personal injury claim did not survive her and, even if it had, the statute of limitations would bar it. Traska does not appeal this finding. The court also found that the statute of frauds did not preclude the breach of contract claim. The court, however, ordered further briefing on the issue of consideration.

On December 21, 2001, the district court entered an order regarding summary judgment (second order). In the second order, the court found that Traska failed to provide admissible evidence of an agreement with CNA to forbear suit, and that forbearance in the absence of an agreement did not constitute consideration. The court specifically found that Traska's statement "[n]o, Mother doesn't want to sue. She doesn't want the bus driver to get in trouble," showed that McColm never intended to sue and, therefore, could not forbear suit as consideration for the alleged settlement agreement. On January 2, 2002, the court entered an order formally granting summary judgment and judgment.

Traska timely appealed.

## II.

### STANDARD OF REVIEW

■ This Court exercises free review over matters of law. *Bouten Constr. Co. v. H.F. Magnuson Co.,* 133 Idaho 756, 760, 992 P.2d 751, 755 (1999).

■ This Court reviews summary judgment de novo. *Carnell v. Barker Mgmt.,* 137 Idaho 322, 326, 48 P.3d 651, 655 (2002) (citing *Intermountain Forest Mgmt., Inc. v. Louisiana Pac. Corp.,* 136 Idaho 233, 235, 31 P.3d 921, 923 (2001)).

■ Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). This Court construes disputed facts liberally in favor of the nonmoving party, and draws all reasonable inferences therefrom in favor of the nonmoving party. *Carnell,* 137 Idaho at 327, 48 P.3d at 656 (citing *Jacobson v. State Farm Mut. Auto. Ins. Co.,* 136 Idaho 171, 173, 30 P.3d 949, 951 (2001)). The nonmoving party must, by affidavit, provide specific facts showing a genuine issue for trial as to those issues raised by the moving party. I.R.C.P. 56(e). Affidavits supporting or opposing the motion for summary judgment "shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *Id.* Admissibility of evidence contained in affidavits supporting or opposing a motion for summary judgment is a threshold question to be answered before determining whether a genuine issue for trial exists. *Carnell,* 137 Idaho at 327, 48 P.3d at 656 (quoting *West v. Sonke,* 132 Idaho 133, 138, 968 P.2d 228, 233 (1998)).

## III.

### ANALYSIS

A. **CNA's Payments On Behalf Of McColm Are Admissible To Show The Existence Of A Settlement Contract.**

■ The respondent argues that section 41–1840(1), Idaho Code, makes evidence of CNA's payments on behalf of McColm inadmissible for purposes of showing the existence of a settlement agreement. Traska argues that evidence of the payments on behalf of McColm supplied by affidavit should be considered in determining whether

there is a genuine issue regarding the existence of a settlement agreement.

Affidavits in support of, or opposition to, summary judgment "shall set forth such facts as would be admissible in evidence...." I.R.C.P. 56(e). Section 41–1840(1), Idaho Code, governs admissibility of evidence of certain payments by insurers. It provides:

No payment or payments made by any person, or by his insurer by virtue of an insurance policy, on account of bodily injury or death or damage to or loss of property of another, shall constitute an admission of liability or waiver of defense as to such injury, death, loss or damage, or be admissible in evidence in any action brought against the insured person or his insurer for damages, indemnity or benefits arising out of such injury, death, loss or damage unless pleaded as a defense to the action.

*Id.* Whether I.C. § 41–1840(1) precludes evidence of payments by an insurer from being admitted to show a settlement contract between an insurer and a third party presents a matter of first impression.

Section 41–1840, Idaho Code, is intended "to encourage tort-feasors and their insurers to alleviate financial hardship inflicted on accident victims without fear of having the evidence of prepayments being introduced at trial." *Turner v. Willis*, 116 Idaho 682, 685, 778 P.2d 804, 807 (1989) (citing *Tommerup v. Albertson's, Inc.*, 101 Idaho 1, 607 P.2d 1055 (1980)). It only governs admissibility of payments made "on account of bodily injury or death or damage to or loss of property of another." "Bodily injury," "death," and "damage to property" plainly and unambiguously refer to payments arising from torts. The damages sought in this case do not arise from a tort. Rather, the damages sought are contractual and not on account of "bodily injury," "death" or "damage to property." Therefore, we hold that evidence of CNA's payments is admissible for the purpose of showing existence of a settlement agreement between CNA and McColm.

**B. Genuine Issues Of Material Fact Exist Regarding The Alleged Settlement Agreement Between CNA And McColm.**

The appellants argue that the undisputed facts show Traska said that McColm didn't want to sue, *but* wanted CNA to pay anything over and above McColm's normal expenses. One may infer from this that McColm would sue if needed, but would forbear suit if CNA paid the additional expenses caused by Valley View's alleged negligence.

The respondent contends that Traska's deposition and affidavit show that McColm never intended to sue CNA or Valley View. Therefore, there is no evidence showing that McColm agreed to forbear suit or that she did so in consideration of CNA's payments.

Contract formation requires that the parties have a common and distinct understanding. *Intermountain Forest Mgmt., Inc. v. Louisiana Pac. Corp.*, 136 Idaho 233, 237, 31 P.3d 921, 925 (2001) (citing *Mitchell v. Siqueiros*, 99 Idaho 396, 400, 582 P.2d 1074, 1078 (1978); *Bros. v. Arave*, 67 Idaho 171, 174 P.2d 202 (1946)). The common and distinct understanding may be express or implied. *Fox v. Mountain West Elec., Inc.*, 137 Idaho 703, 707, 52 P.3d 848, 852 (2002) (citing *Cont'l Forest Prod., Inc. v. Chandler Supply Co.*, 95 Idaho 739, 743, 518 P.2d 1201, 1205 (1974)). When consideration supports a distinct and common understanding of the parties, the understanding becomes an enforceable contract. *Day v. Mortgage Ins. Corp.*, 91 Idaho 605, 607, 428 P.2d 524, 526 (1967). A promisee's bargained-for action or forbearance, given in exchange for a promise, constitutes consideration. *Id.* (citing RESTATEMENT, CONTRACTS, § 75 (1932)). "[F]orbearance to exercise a right against either a promisor or a third person is sufficient consideration for a contract." *Walter E. Wilhite Revocable Living Trust v. Northwest Yearly Meeting Pension Fund*, 128 Idaho 539, 546, 916 P.2d 1264, 1271 (1996) (citing *McMahon v. Auger*, 83 Idaho 27, 38, 357 P.2d 374, 380 (1960)); *see also Quayle v. Mackert*, 92 Idaho 563, 569, 447 P.2d 679, 685 (1968).

Traska was asked at deposition how she and Mueller came to the agreement that McColm would pay $1990.00 per month plus the cost of prescription drugs and CNA

would pay the excess expenses. Traska stated:

> This was the agreement that Ms. Mueller and I struck because she said, well, your mother would have to pay some living expenses somewhere. I said, "She is in a nursing home because of that fall," and [Mueller] wanted to know if we were going to sue and I said, *"No, Mother doesn't want to sue. She doesn't want the bus driver to get in trouble," but anything over and above what would be her normal living expenses, since she has to have nursing home care, should be [CNA's] expense, and [Mueller] agreed.*

On its face, Traska's statement shows that she wanted CNA to compensate McColm for the injuries McColm sustained as the result of Valley View's alleged negligence.

Construing Traska's deposition testimony most favorably for her and drawing all reasonable inferences in her favor, her testimony creates a genuine issue regarding a common and distinct understanding of the parties. The understanding that may be inferred is two-fold. First, McColm would continue to pay her "normal living expenses"—the cost of housing before her fall and prescription drugs, and Mueller agreed that CNA would pay the excess. Second, McColm would not sue Valley View. The inference of the two-fold understanding also receives support from surrounding circumstances: (1) shortly after Traska's alleged conversation with Mueller, CNA began paying McColm's bills in accord with the bargain Traska allegedly struck with CNA; and (2) Traska didn't sue Valley View until CNA stopped paying in accordance with the alleged agreement.

Forbearance from exercising a right—such as the right to resort to the courts to settle a dispute—in exchange for a promise to pay money constitutes consideration. *Walter E. Wilhite Revocable Living Trust,* 128 Idaho at 546, 916 P.2d at 1271 (citing *McMahon,* 83 Idaho at 38, 357 P.2d at 380; *Quayle,* 92 Idaho at 569, 447 P.2d at 685); *Day,* 91 Idaho at 607, 428 P.2d at 526. One may reasonably infer from the undisputed facts that CNA's willingness to pay was premised on McColm's forbearance from suit. Conse-

quently, a genuine issue of material fact exists regarding the issue of consideration.

Construing the facts most favorably for Traska and drawing all reasonable inferences in her favor, we find that a genuine issue of material fact exists regarding whether the parties reached a distinct and common understanding that McColm would not sue if CNA would pay McColm's excess expenses caused by Valley View's alleged negligence. These same facts showing a genuine issue regarding an agreement also give rise to a genuine issue regarding consideration through payment for forbearance. Therefore, we vacate summary judgment and remand this matter for further proceedings.

## IV.

## CONCLUSION

CNA's payments on behalf of McColm may be considered to determine whether there are genuine issues of material fact regarding the existence of a settlement agreement. In light of the payments and other evidence in the record, genuine issues of material fact exist regarding the existence of a settlement agreement supported by consideration. Therefore, we vacate the district court's order granting summary judgment and remand this case for further proceedings consistent with this opinion.

No attorney fees are requested on appeal. Costs are awarded to the appellant.

Chief Justice TROUT and Justices SCHROEDER, WALTERS, and EISMANN concur.