**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 34488**

| | | |
|---|---|---|
| WILLIAM R. SHORE and ROBERTA S. SHORE, husband and wife, | ) ) ) | |
| Plaintiffs-Appellants-Cross Respondents, | ) ) ) | Boise, January 2009 Term |
| | ) | 2009 Opinion No. 36 |
| v. | ) ) | Filed: March 5, 2009 |
| ROD PETERSON, | ) ) | Stephen W. Kenyon, Clerk |
| Defendant-Respondent-Cross Appellant. | ) ) ) | |

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, for Franklin County.  Honorable Don L. Harding, District Judge.

The judgment on the merits is <u>affirmed</u>, the order on costs and attorney fees is <u>vacated</u>, and the case is <u>remanded</u>.

Merrill & Merrill, Chartered, Pocatello, for appellants.  Kent A. Higgins argued.

Atkin Law Offices, Bountiful, Utah, for respondent.   Blake S. Atkin argued.

_____

J. JONES, Justice

In the bench trial of this action to collect on a promissory note, the district court found that an accord and satisfaction had discharged the defendant's liability on the note.  However, the court declined to award the defendant his costs and attorney fees.  Both parties appealed to this Court.  We affirm the judgment on the merits but vacate the ruling regarding costs and fees.

**I.**

Rod Peterson ran his farm equipment repair business, Countryside Farm Repair (CFR), as a sole proprietorship until it was incorporated on August 6, 1997.  Once CFR became incorporated, Peterson served as the president.  In operating the business, Peterson used an aggregation of tools and equipment that he had purchased over the past forty-some years.

1

Although he testified at trial that most of those items were his personal property, other evidence showed that many of the tools may have belonged to CFR because they were purchased with checks drawn on its corporate account.

In May 2000, William and Roberta Shore loaned Peterson $10,000, and received a promissory note from Peterson in that amount. The note required quarterly interest payments of $250, with the balance due and payable on May 1, 2001. The next month, Peterson added an additional $10,000 in principal to the note on the same terms. Peterson signed the note in his personal capacity for each advance.

Later in 2000, Peterson moved CFR's business to property owned by the Shores. Around the same time, Allan Swainston, Heber Swainston, and Kay Swainston became shareholders of CFR, acquiring forty-five percent of the shares. Peterson retained forty-five percent and his son, Jeremy, held ten percent.

Four years after becoming shareholders, the Swainstons acquired Jeremy's shares in exchange for releasing him from personal liability on CFR's mounting debts. As the majority shareholders with fifty-five percent of the shares, the Swainstons voted Peterson out as the president. In July 2004, after removing Peterson as president, the Swainstons formed Countryside Equipment and Repair, LLC (CE). CE operated in the same line of business and on the same premises as CFR. After CE was formed, CFR ceased to operate. CE did not formally buy out CFR, nor did CFR transfer its assets or operations to CE.

After his removal, Peterson continued to enter the business premises to pick up tools and equipment that he claimed were his personal property. In August 2004, the Swainstons and the Shores obtained a sheriff's restraint to prevent Peterson from taking tools and equipment off the business premises. The Swainstons also changed the locks on the building to try to prevent Peterson from gaining entry. In order to settle their differences, Peterson and the Swainstons made an agreement whereby Peterson's shares in CFR were transferred to the Swainstons in exchange for Peterson's release from a list of enumerated liabilities, which specifically included Peterson's personal note to the Shores.[1] However, Peterson continued to claim an interest in the tools and equipment on the business premises.

---

[1] The Swainstons did not pay the note, and Peterson argued at trial that they breached the contract transferring his CFR shares to them. Since the Swainstons are not parties to this action, we decline to consider this argument.

CE apparently began having difficulties, as the Swainstons approached Mr. Shore to ask him to take over the business. Mr. Shore, Peterson, and the Swainstons met to discuss the winding up of CFR and CE, and the transition to Mr. Shore's business. All those present at the meeting, including Mr. Shore, knew that both CE and CFR were indebted to other parties, and that any item of value with a title was pledged as security to creditors. During this meeting, Mr. Shore stated that if Peterson would leave his tools and equipment on the business premises, Mr. Shore would not pursue the note owed by Peterson. After the meeting, Peterson stopped claiming the tools and equipment.

On March 1, 2005, Mr. Shore took over the business and the Swainstons folded CE. Mr. Shore's business, Bear River Equipment, Inc., was incorporated on March 4, 2005. Mr. Shore indicated that the tools and equipment he wanted Peterson to leave behind were at the premises when Bear River began its operations. Mr. Shore then began disposing of many of the assets left behind in order to remove outdated and encumbered property from his business premises. He even gave some items back to Peterson because they were of no value to Bear River.

After acquiring the business, the Shores sued Peterson to collect on the promissory note and recover damages for the alleged conversion of two tractors. Peterson asserted the affirmative defense of accord and satisfaction and counterclaimed for conversion of his tools and equipment. During a bench trial, Peterson moved to dismiss the Shores' claim for conversion. The district court dismissed the claim and that ruling has not been appealed.

In its decision following trial, the district court determined that Peterson had proven a valid accord and satisfaction, based on the relinquishment of his claim to the tools and equipment left at the business premises. Accordingly, the court found that Peterson's liability on the note was discharged. Responding to the Shores' contention that Peterson could not claim an accord and satisfaction based on leaving behind tools and equipment which were not proven to be his personal property, the court held that Peterson's relinquishment of his claimed interest was sufficient consideration to support the new agreement, regardless of who actually owned the property. The court did, however, order Peterson to return a swather trailer that he had borrowed from Mr. Shore after the lawsuit was filed. Because Peterson's counterclaim for conversion was in the alternative to his affirmative defense of accord and satisfaction, the court dismissed the counterclaim.

3

Peterson requested an award of attorney fees and costs. The district court determined that Peterson was not entitled to costs and fees because he did not fully prevail on his claims. The court reasoned that although Peterson successfully asserted his affirmative defense of accord and satisfaction, the Shores successfully defended against Peterson's counterclaim. Therefore, the court found "that the fair and equitable manner of apportioning costs is to require [Peterson] to pay his own costs." Thus, the court disposed of Peterson's claims for costs as a matter of right, discretionary costs, and attorney fees based on a finding that he was not the prevailing party.

The Shores appealed to this Court, asserting two primary arguments: (1) that the district court applied the wrong test for finding an accord and satisfaction; and (2) that the court erred in disregarding the question of whether Peterson or the business entity owned the property allegedly transferred pursuant to the accord and satisfaction agreement. Peterson cross-appealed arguing that the district court erred in refusing to award him attorney fees and costs.

## II.
## Standard of Review

The review of a trial court's decision after a court trial is limited to ascertaining "whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law." *Griffith v. Clear Lakes Trout Co.*, 143 Idaho 733, 737, 152 P.3d 604, 608 (2007) (quoting *Idaho Forest Indus., Inc. v. Hayden Lake Watershed Improvement Dist.*, 135 Idaho 316, 319, 17 P.3d 260, 263 (2000)). The trial court's findings of fact will not be set aside unless clearly erroneous. *Id.* Thus, even if the evidence is conflicting, if the findings of fact are supported by substantial and competent evidence this Court will not disturb those findings on appeal. *Id.* In reviewing a trial court's conclusions of law, however, a different standard applies: this Court is not bound by the legal conclusions of the trial court, but may draw its own conclusions from the facts presented.[2] *Id.*

---

[2] Peterson asserts that the Shores, as the appellants, must "marshal the evidence" in order to show that the trial court's factual findings were clearly erroneous under *Chen v. Stewart*, 100 P.3d 1177, 1184 (Utah 2004). However, Idaho courts have not adopted or otherwise enunciated a standard that is comparable to Utah's marshalling standard. Instead, an appellant in Idaho has the burden of presenting to the appellate court all evidence taken into account by the trial court in reaching the decision which the appellant contests. *See Fritts v. Liddle & Moeller Constr., Inc.*, 144 Idaho 171, 173, 158 P.3d 947, 949 (2007). Since the Shores have presented this Court with a complete record and transcripts of the proceedings before the district court, this standard has been met, and we will consider the substance of the appeal.

## III.
### The District Court Correctly Found an Accord and Satisfaction

The Shores raise three arguments to contest the district court's finding that an accord and satisfaction between the parties discharged Peterson's liability on the note. First, they argue that the district court erred by holding that a bona fide dispute need not exist in order to find an accord and satisfaction. Second, they argue the alleged agreement lacked consideration because Peterson did not own the property he allegedly transferred. Third, they assert that the facts do not support finding an accord and satisfaction. Each argument will be considered in turn.

## A.
### The District Court Did Not Err by Holding that a Bona Fide Dispute Is Not a Necessary Element in Every Alleged Accord and Satisfaction

The Shores argue that an accord and satisfaction has three elements: (1) a bona fide dispute as to the amount owed; (2) that the debtor tendered an amount to the creditor with the intent that such payment would be in total satisfaction of the debt owed to the creditor; and (3) that the creditor agreed to accept the payment in full satisfaction of the debt.[3] The Shores argue that the district court erred in not addressing the first element, based on its conclusion that Idaho law did not require it. Regarding the elements of an accord and satisfaction, the district court observed:

> The Court is aware there is some controversy over whether the obligation must be in dispute before an accord and satisfaction can be found. Reviewing the cases cited by counsel, it is clear to this Court that the obligation must only be in dispute when one attempts to offer a negotiable instrument, such as a check, in satisfaction of another obligation to pay money. "It is not essential that the claim discharged by accord and satisfaction be in dispute or controversy, such being a characteristic of compromise and settlement." *Conklin v. Patterson*, 85 Idaho 331, 338 (1963) . . . . Moreover, following the cases cited by counsel to support the requirement for controversy, the Court notes that the cases can be traced back to a case that does not require dispute of the obligation, *Fairchild v. Mathews*, 91 Idaho 1 (1966), and that the dispute requirement crept in by way of the UCC adopted in the Idaho Code.

---

[3] The Shores assert that there is an additional requirement to the accord and satisfaction defense, namely, that "the debtor must prove that the creditor 'definitely assented' to the new arrangement." The Shores cite *Nelson v. Armstrong*, 99 Idaho 422, 582 P.2d 1100 (1978) for that principle. However, that case does not discuss "adding" an extra element, but merely highlights the fact that the party alleging an accord and satisfaction has the burden of establishing that the creditor agreed to accept the substitute performance as full satisfaction of the debtor's obligation. *Id.* at 430, 582 P.2d at 1108. Notably, the crux of that case involved a statute, and the Court merely mentioned the common law standard in passing. *Id.*

Peterson argues that the district court's conclusion was correct, since the first element asserted by the Shores is derived from Idaho Code § 28-3-310, which relates specifically to accord and satisfaction accomplished by use of a negotiable instrument. Peterson argues that the statute, and the cases which follow it, do not apply when the substituted performance is one that has no liquidated value – such as in this case, where the substituted performance was the relinquishment of a claim to property.

Idaho Code § 28-3-310 was enacted in 1993.[4] This section implements a portion of the Uniform Commercial Code (UCC), which alters and codifies the previously-existing Idaho case law requirements for effecting an accord and satisfaction by use of a negotiable instrument. When an alleged accord and satisfaction is based on the acceptance of a negotiable instrument, the transaction is governed by Idaho Code § 28-3-310. The elements of such an accord and satisfaction are: (1) the obligor in good faith tendered an instrument to the obligee as full satisfaction of the claim; (2) the amount of the claim was unliquidated or subject to a bona fide dispute; (3) the obligee obtained payment of the instrument; and (4) the instrument contained a conspicuous statement to the effect that it was tendered as full satisfaction of the claim. *Strother v. Strother*, 136 Idaho 864, 867, 41 P.3d 750, 753 (Ct. App. 2002); *see also* I.C. § 28-3-310. These statutory elements are *only* applied in cases involving the satisfaction of a debt through the use of a negotiable instrument. I.C. § 28-3-310 cmt. 1 ("This section deals with an informal method of dispute resolution carried out by use of a negotiable instrument.").

Under the facts of this case, the original obligation was on a negotiable instrument, and it was allegedly discharged by a method *other than* the use of a negotiable instrument. Therefore, Idaho Code § 28-3-310 does not govern. Instead, Idaho Code § 28-3-601(1) applies. That section states: "The obligation of a party to pay the instrument is discharged as stated in this chapter or by an act or agreement with the party which would discharge an obligation to pay money under a simple contract." I.C. § 28-3-601(1). Thus, common law accord and satisfaction is sufficient to discharge an obligation on a negotiable instrument.

An accord and satisfaction is generally defined as "a method of discharging a contract or cause of action, [w]hereby the parties agree to give and accept something in settlement of the

---

[4] Since the Idaho Legislature did not adopt section 3-307 of the Uniform Commercial Code, sections 28-3-307 to 28-3-111 of the Idaho Code correspond to sections 3-308 to 3-312 of the official version. *See* I.C. § 3-310, compiler's notes.

claim or demand of the one against the other, and perform such agreement, the 'accord' being the agreement and the 'satisfaction' its execution or performance." *Strother*, 136 Idaho at 867, 41 P.3d at 753 (quoting *Fairchild v. Mathews*, 91 Idaho 1, 4, 415 P.2d 43, 46 (1966)); *see also Conklin v. Patterson*, 85 Idaho 331, 338, 379 P.2d 428, 431 (1963) (recognizing that a *prima facie* case of accord and satisfaction is shown when a creditor offers to accept something other than the original performance stated in the agreement, and the debtor gives that performance); 1 Am. Jur. 2d *Accord & Satisfaction* § 1 (1994). "To establish an accord and satisfaction the parties accepting a new or different obligation must do so knowingly and intentionally"; however, an accord and satisfaction may be implied from the attendant circumstances.[5] *Harris v. Wildcat Corp.*, 97 Idaho 884, 886, 556 P.2d 67, 69 (1976). Since an accord and satisfaction is a substituted contract, the essentials of a valid contract must be present, including: proper subject matter, competent parties, a meeting of the minds, and consideration. 1 Am. Jur. 2d *Accord & Satisfaction* § 5 (1994).

The bona fide dispute requirement arose from the long-standing rule that payment of less than the amount due on an undisputed, liquidated claim could not constitute a valid accord and satisfaction unless such settlement was supported by some consideration other than the partial payment. *Id.* § 28. The rule was based on the doctrine that a promise to perform something one has a pre-existing legal obligation to do is not adequate consideration to support a contract.[6] However, where there is an unliquidated or disputed claim and one party pays more than he or she admits is due, but less than the other party claims is due, there are sufficient mutual

---

[5] The Shores insist that an accord and satisfaction cannot be implied, and rely on the following: "It cannot be too strongly stated that an accord and satisfaction can never be implied from language of doubtful meaning; indeed, the words themselves deny this possibility." *Fairchild*, 91 Idaho at 4, 415 P.2d at 46. This argument is misleading, since the full quote begins: "In order for the acceptance of a check to amount to an accord and satisfaction, where it is for a lesser sum than is claimed by the creditor to be due, the conditions must be made plain, definite and certain by the debtor that he is giving such check in complete settlement and satisfaction of all account between him and his creditor and that acceptance thereof shall close the account or controversy." *Id.* The Court was merely stating it would not imply that a negotiable instrument was being tendered in full settlement of a disputed claim where the language employed in the instrument was ambiguous in nature, rather than "plain, definite, and certain." *Id.*

[6] It is well established "that a promise to do, or the doing of, what one is already bound by contract to do, is not valid consideration." *Dashnea v. Panhandle Lumber Co.*, 57 Idaho 232, 238, 64 P.2d 390, 393 (1937) (quoting *Indep. Sch. Dist. No. 6 v. Mittry*, 39 Idaho 282, 289, 226 P. 1076, 1078 (1924)). Conversely, the doing by one of the parties of something that he is not legally bound to do constitutes consideration for the other's promise to modify the terms of the original agreement. *Dashnea*, 57 Idaho at 238, 64 P.2d at 393; *see also Great Plains Equip., Inc. v. Nw. Pipeline Corp.*, 132 Idaho 754, 769, 979 P.2d 627, 642 (1999).

7

concessions upon which a valid accord and satisfaction may be based. *Id.* § 41. Further the rule does not apply when a debtor pays the creditor with a different medium than contemplated in the original contract, or where the debtor pays the creditor in property – so long as the parties agree that such acts will constitute full satisfaction of the debt. *Id.* § 34.

The Shores rely on *Beard v. George*, 135 Idaho 685, 23 P.3d 147 (2001), in arguing that a party asserting the defense of accord and satisfaction must prove that a bona fide dispute existed. *See id.* at 689, 23 P.3d at 151. An examination of *Beard* shows that, although the case identifies similar elements of an accord and satisfaction to those asserted by the Shores, the Court did not consider whether those elements were properly applied to all instances of an alleged accord and satisfaction. *See id.* Instead, the Court extracted the test verbatim from another case, which involved accord and satisfaction effected by use of a negotiable instrument – a type of accord and satisfaction that had special elements even before they were codified at Idaho Code § 28-3-310. *See id.*

In *Beard*, Beard owed George $15,750, plus accrued interest on a promissory note. *Id.* at 686, 23 P.3d at 148. In the lawsuit that followed, Beard asserted that he had effected an accord and satisfaction on the note by paying $5,000 cash to George and agreeing to allow George to charge items at Beard's store. *Id.* at 686-87, 23 P.3d at 148-49. After a bench trial, the court determined that no accord and satisfaction had occurred, but did grant Beard a setoff of $5,000 on the note. *Id.*

On appeal, Beard argued that the district court erred by determining that Beard's payment of $5,000 cash and permission to George to charge items at Beard's store did not constitute an accord and satisfaction of the note. *Id.* at 688, 23 P.3d at 150. The district court observed that the preponderance of the evidence did not support the assertion that both parties intended the money to act as a full discharge of the obligation arising from the note. *Id.* at 689, 23 P.3d at 151. This Court affirmed the district court's finding and stated that the party asserting accord and satisfaction has the burden of proving that the creditor agreed to the new arrangement, because an accord and satisfaction is the substitution of a new contract for an existing obligation. *Id.* at 687, 23 P.3d at 149.

Notwithstanding its recognition that an accord and satisfaction is a substituted contract, the Court recited the elements of an accord and satisfaction from an earlier case as follows:

8

(1) a bona fide dispute as to the amount owed; (2) that the debtor tendered an amount to the creditor with the intent that such payment would be in total satisfaction of the debt owed to the creditor; and (3) that the creditor agreed to accept payment in full satisfaction of the debt, or that both the debtor and the creditor understood that the acceptance of the check was in full payment of all sums owed by the debtor.

*Beard*, 135 Idaho at 689, 23 P.3d at 151. Even a cursory reading of the listed elements reveals that they are not meant to apply in every situation. First, if the elements applied to every accord and satisfaction, then a substitute contract could only occur by a debtor tendering "an amount" to the creditor, according to the second element. However, Idaho law clearly establishes that a substituted performance, other than the payment of money, can support an accord and satisfaction. *See, e.g., Conklin v. Patterson*, 85 Idaho 331, 338, 379 P.2d 428, 431-32 (1963) (holding that an alleged agreement to transfer stock in satisfaction of the underlying obligation established a *prima facie* case of accord and satisfaction). Second, the third element expressly references payment by check. Additionally, as will be discussed momentarily, an examination of the cases cited by the Court in *Beard* reveals that the elements listed apply only to accord and satisfactions effected by use of negotiable instruments.

The *Beard* Court extracted the three elements of accord and satisfaction from *Perkins v. Highland Enterprises, Inc.*, 120 Idaho 511, 817 P.2d 177 (1991). In *Perkins*, this Court approved a jury instruction which set forth the elements of an accord and satisfaction in the same manner as in *Beard*. *Perkins*, 120 Idaho at 515, 817 P.2d at 181. However, in approving that instruction, the Court was dealing specifically with the allegation that a negotiable instrument had been used to effect the accord and satisfaction. *Id.* at 514, 817 P.2d at 180. The Court in *Beard* simply recited the elements listed in *Perkins* without analyzing whether those elements applied in situations where the accord and satisfaction occurs by means other than by use of a negotiable instrument. *See Beard*, 135 Idaho at 689, 23 P.3d at 151.

The case upon which *Perkins* relied to support its assertion that those three elements constitute an accord and satisfaction, *Fairchild v. Mathews*, 91 Idaho 1, 415 P.2d 43 (1966), does not require a bona fide dispute. *Fairchild* involved one party's attempt to settle a debt of more than $1,000, as determined by the trial court, with a check for $250. *Id.* at 3-4, 415 P.2d at 45-46. The party alleged that an accord and satisfaction occurred when the other party accepted that check, but the court disagreed. *Id.* at 5, 415 P.2d at 47. On appeal, this Court stated generally:

9

> To constitute an accord and satisfaction there must be an offer in full satisfaction of the obligation accompanied by such acts and declarations as amount to a condition that if it is accepted, it is to be in full satisfaction, and the condition must be such that the party to whom the offer is made is bound to understand that if he accepts it, he does so subject to the conditions imposed.

*Id.* at 4, 415 P.2d at 46. The Court went on to discuss specific elements that applied in that case:

> In order for the acceptance of a check to amount to an accord and satisfaction, where it is for a lesser sum than is claimed by the creditor to be due, the conditions must be made plain, definite and certain by the debtor that he is giving such check in complete settlement and satisfaction of all account between him and his creditor and that acceptance thereof shall close the account or controversy. Also an accord and satisfaction cannot arise by reason of the payment of less than is due, unless it clearly appears not only that this was the intention of the payor, but also that the payee expressly agreed to it, or was bound to know of the intention at the time of the acceptance.

*Id.* Nowhere does the Court discuss the necessity of a bona fide dispute.

Both *Perkins* and *Fairchild* were abrogated by the Idaho Legislature's enactment of Idaho Code § 28-3-310 in 1993. However, even before the enactment of Idaho Code § 28-3-310, two separate lines of cases existed in Idaho regarding the common law requirements for accord and satisfaction: one addressing the elements when a negotiable instrument was used to discharge the original obligation, and the other addressing the elements when some other means were used to discharge the original obligation.

The line of cases involving discharge by use of a negotiable instrument, all of which have been altered by the enactment of Idaho Code § 28-3-310, identify certain elements beyond the basic requirements of an accord and satisfaction. Only these cases contain language regarding a bona fide dispute. In *Nordling v. Whelchel Mines Co.*, 90 Idaho 213, 218-19, 409 P.2d 398, 402 (1965), this Court identified the essential elements of an accord and satisfaction similarly to other cases.[7] Additionally, the Court approved a jury instruction that read: "where there is a bona fide dispute between two parties as to the amount due and owing from one to the other on an unliquidated claim and the debtor tenders a negotiable bank check for the amount which he claims is due, and tenders the same in full payment and settlement, and the creditor accepts and

---

[7] The essential elements were: (1) an offer in full settlement of the obligation; (2) acts and declarations accompanying the offer that amount to a condition that if the offer is accepted it is to be in full satisfaction of the obligation; and (3) the condition must be such that the offeree is bound to understand that if he accepts the offer he does so subject to the condition imposed. *Nordling*, 90 Idaho at 218, 409 P.2d at 402.

10

cashes the same without objection, it is a payment and a discharge of the account in full." *Id.* at 221, 409 P.2d at 403.

Idaho cases not involving the use of a negotiable instrument to accomplish an accord and satisfaction focus on the intent of the parties to settle the underlying dispute and do not reference the bona fide dispute requirement. *See, e.g., Harris*, 97 Idaho at 886, 556 P.2d at 69; *Conklin*, 85 Idaho at 338, 379 P.2d at 431-32; *World Wide Lease, Inc. v. Woodworth*, 111 Idaho 880, 885, 728 P.2d 769, 774 (Ct. App. 1986); *W. F. Constr. Co. v. Kalik*, 103 Idaho 713, 715, 652 P.2d 661, 663 (Ct. App. 1982). In fact, some cases note that it is generally not essential that a dispute or controversy be shown in order to find a valid accord and satisfaction. *See Conklin*, 85 Idaho at 338, 379 P.2d at 431-32.

There is no reason to apply a blanket rule that only those claims which are subject to a bona fide dispute may be resolved by an accord and satisfaction. While the element of a bona fide dispute may be necessary when an accord and satisfaction is accomplished by use of a negotiable instrument, it is not necessary in other instances. The real question is whether or not adequate consideration exists to support the accord and satisfaction, and that element can be present in some circumstances without a bona fide dispute.

## B.
### The Trial Court Properly Found that Peterson's Relinquishment of His Alleged Legal Interest in the Property Was Adequate Consideration to Support the Accord and Satisfaction

The Shores contend that the district court erred in concluding that Peterson's ownership interest in the property he purportedly left for the Shores is irrelevant to the question of whether an accord and satisfaction occurred. They argue that since an accord and satisfaction is really a new contract, governed by contract law, new and sufficient consideration is required.[8] Peterson counters that his relinquishment of his claim to the property was adequate consideration to support the deal.

An accord and satisfaction requires that the new agreement, which replaces the original, be supported by adequate consideration. *Exch. Lumber & Mfg. Co. v. Thomas*, 71 Idaho 391,

---

[8] The Shores suggest that the only way Peterson could have delivered adequate consideration would be if he actually owned the property conveyed. The Shores go on to assert that the evidence presented at trial shows that the assets Peterson claimed to support his accord and satisfaction were actually owned by CFR. However, consideration by relinquishing a claimed interest in property is not synonymous with legal ownership of that property, and therefore the Shores' arguments on this issue fail.

11

396, 233 P.2d 406, 408 (1951) (holding that an individual's promise to pay a lesser amount than what was due on a promissory note, for which she was already obligated, was not sufficient consideration so long as it had not been paid). Generally, a verbal agreement to reduce an existing contract price, or to accept a lesser amount as full payment, is void for lack of consideration. *Marysville Dev. Co. v. Hargis*, 41 Idaho 257, 260, 239 P. 522 (1925). A well-recognized exception to that rule is that, where an agreement is fully executed on both sides, the question of consideration becomes immaterial. *Id.* at 260, 239 P. at 522-23. "The question of consideration for an accord and satisfaction is no longer a factor unless the contract for the accord remains unexecuted." *Ashby v. Hubbard*, 100 Idaho 67, 69, 593 P.2d 402, 404 (1979); *see also, Knoke v. Charlebois*, 107 Idaho 427, 429, 690 P.2d 362, 364 (Ct. App. 1984) ("An accord, like any contract, must be supported by consideration. But when the contract has been fully performed – that is, when the accord has been satisfied – the courts will not retroactively invalidate it upon a question of consideration."). Since Peterson fully performed his end of the bargain by relinquishing his claim to the property, the issue of consideration is no longer a factor. The trial court's ruling was proper.[9]

## C.
## The Trial Court Did Not Err in Finding an Accord and Satisfaction

The Shores argue that there is insufficient evidence to support the trial court's finding of an accord and satisfaction. Peterson argues that, although the evidence is conflicting, there is sufficient evidence to support the district court's finding that there was an accord and satisfaction.

An accord and satisfaction is a substituted contract, the formation of which requires that there be a meeting of the minds as evidenced by a manifestation of mutual intent to contract. *Heritage Excavation, Inc. v. Briscoe*, 141 Idaho 40, 43, 105 P.3d 700, 703 (Ct. App. 2005). This manifestation takes the form of an offer and acceptance. *Id.* An offer "is a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Id.* (quoting *Intermountain Forest Mgmt.,*

---

[9] Additionally, Idaho case law suggests that Peterson's relinquishment of his claim to the tools may have been adequate consideration. "A promisee's bargained-for action or forbearance, given in exchange for a promise, constitutes consideration." *McColm-Traska v. Valley View, Inc.*, 138 Idaho 497, 501, 65 P.3d 519, 523 (2003). "Forbearance from exercising a right – such as the right to resort to the courts to settle a dispute – in exchange for a promise to pay money constitutes consideration." *Id.* at 502, 65 P.3d at 524.

*Inc. v. Louisiana Pac. Corp.*, 136 Idaho 233, 237, 31 P.3d 921, 925 (2001)). In the case of a unilateral contract, where the offeror makes a promise that is conditional on the offeree's acceptance, an offeree may accept *only* by rendition of the requested performace. *Deer Creek, Inc. v. Clarendon Hot Springs Ranch, Inc.*, 107 Idaho 286, 291, 688 P.2d 1191, 1196 (Ct. App. 1984). Whether a contract, such as an accord and satisfaction, was formed is a question of fact. *Fairchild*, 91 Idaho at 5, 415 P.2d at 47.

The Shores argue that Peterson could not even articulate exactly what the alleged accord was, when or where it took place, or the precise terms. They further assert that Peterson's testimony contradicted itself and otherwise demonstrated that he did not know the terms of the alleged agreement. While it may be true that Peterson's testimony did not demonstrate a perfect recollection of events, numerous witnesses testified that Mr. Shore stated that he would not sue on the note if Peterson left the tools and equipment on the business premises. Although there is conflicting testimony on precisely which tools and equipment were included in that deal, substantial evidence supports that the deal was made.

The Shores claim that no accord and satisfaction could have occurred between Peterson and the Shores because Mr. Shore's verbal offer was to the Swainstons, not Peterson, and therefore only the Swainstons could accept it. This argument is contrary to the district court's findings of fact and the evidence offered at trial. The court concluded "Mr. Peterson's claim, in short, is Mr. Shore made an offer, and I accepted, and I should now get the benefit of my bargain. The Court agrees." The offer was that Mr. Shore would not sue on the note if Peterson left his tools and equipment on the premises and relinquished any claim to them. While Mr. Shore's statement was made in the presence of the Swainstons and Peterson, it was an offer which specifically requested an acceptance by Peterson, since it required him to leave his tools and relinquish his interest. Therefore, despite the Shores' characterization of the offer, it was made to Peterson.

The Shores next argue that Peterson never accepted Mr. Shore's offer and point to *Heritage Excavation, Inc. v. Briscoe*, 141 Idaho at 43, 105 P.3d at 703, to support this contention. The Shores argue that Peterson remained silent, and merely failed to reject the alleged offer, neither of which could constitute an acceptance according to *Heritage*. However, *Heritage* dealt with a situation where an offeree refused to sign a written contract. *Id.* No facts in that case addressed the situation where the offer requires the offeree to accept by performance,

13

as occurred in this case. The Shores' argument overlooks the fact that the alleged accord and satisfaction in this case was unilateral in nature, and specifically requested Peterson to accept by performing. Mr. Shore's offer was conditioned on Peterson leaving his tools at the business premises, which is exactly what the district court found that he did. Peterson's performance constituted an acceptance of Mr. Shore's offer.

The Shores again insist that Peterson's relinquishment of his interest in the tools and vehicles was inadequate to constitute consideration for the alleged agreement, because the vehicles are still in Peterson's possession (except for the trailer which Peterson returned *after* trial by order of the district court). As discussed by the trial court, the required components of the accord and satisfaction were present on the premises when Mr. Shore took over the business. What Mr. Shore did with the property after taking possession of it does not affect whether or not an accord and satisfaction was accomplished.

Although some conflicting evidence exists, there is substantial evidence to support the district court's finding that an accord and satisfaction occurred, which discharged Peterson's liability on the note.

## IV.
### The District Court Erred in Holding that Peterson Was Not the Prevailing Party

Peterson argues that the district court erred in determining that he was not the prevailing party because his conversion claims were in the alternative to his accord and satisfaction claim. Peterson insists that he was the prevailing party in this action, because judgment was entered in his favor and the Shores recovered nothing from Peterson on any of their counts. The only claim on which Peterson did not prevail was his defensive claim of conversion that was asserted in the alternative.

A prevailing party in an action is entitled to certain costs as a matter of right and may, in some cases, also be awarded discretionary costs and attorney fees. Idaho R. Civ. P. 54(d)(1). A determination on prevailing parties is committed to the discretion of the trial court. *Eighteen Mile Ranch, LLC v. Nord Excavating & Paving, Inc.*, 141 Idaho 716, 718-19, 117 P.3d 130, 132-33 (2005). Idaho Rule of Civil Procedure 54(d)(1)(B) guides courts' inquiries on the prevailing party question. *Id.* at 719, 117 P.3d at 133. That rule provides:

> In determining which party to an action is a prevailing party and entitled to costs, the trial court shall in its sound discretion consider the final judgment or result of the action in relation to the relief sought by the respective parties. The trial court

14

> in its sound discretion may determine that a party to an action prevailed in part and did not prevail in part, and upon so finding may apportion the costs between and among the parties in a fair and equitable manner after considering all of the issues and claims involved in the action and the resultant judgment or judgments obtained.

Idaho R. Civ. P. 54(d)(1)(B). In determining which party prevailed where there are claims and counterclaims between opposing parties, the court determines who prevailed "in the action"; that is, the prevailing party question is examined and determined from an overall view, not a claim-by-claim analysis. *Eighteen Mile*, 141 Idaho at 719, 117 P.3d at 133.

Only in rare cases has this Court or the Court of Appeals reversed a trial court's determination of which party prevailed. In *Eighteen Mile*, we reversed the trial court's determination that although the defendants had successfully defended against plaintiff's complaint, because they recovered only a small portion of what they desired on their counterclaim, they were not prevailing parties. *Id.* at 719, 117 P.3d at 133. In that case we emphasized that a defendant's non-liability is evidence that it is the prevailing party. In *Daisy Manufacturing Co. v. Paintball Sports, Inc.*, 134 Idaho 259, 999 P.2d 914 (Ct. App. 2000), the Court of Appeals observed: "The 'result obtained' in this case was a dismissal of [plaintiff's] action with prejudice, the most favorable outcome that could possibly be achieved by [a defendant]. [The plaintiff] gained no benefit as a consequence of the litigation." *Id.* at 262, 999 P.2d at 917. Those cases illustrate that a defendant may be the prevailing party when he or she is ultimately found not liable.

When both parties are partially successful, however, it is within the court's discretion to decline an award of attorney fees to either side. *Israel v. Leachman*, 139 Idaho 24, 27, 72 P.3d 864, 867 (2003). In *Israel,* the plaintiffs prevailed on their claim under the Idaho Consumer Protection Act, but did not prevail on their claims for breach of contract, statutory violations, and fraud. *Id.* at 25-26, 72 P.3d at 865-66. We affirmed the district court's decision to award no attorney fees because it determined that both parties prevailed in part. *Id.* at 28, 72 P.3d at 868.

The district court's determination of who is a prevailing party will not be disturbed absent an abuse of discretion. *Trilogy Network Sys., Inc. v. Johnson*, 144 Idaho 844, 847, 172 P.3d 1119, 1122 (2007). When examining whether a trial court abused its discretion, this Court considers whether the trial court: (1) perceived the issue as one of discretion; (2) acted within the outer boundaries of this discretion and consistently with the legal standards applicable to the

15

specific choices available to it; and (3) reached its decision by an exercise of reason. *Id.* (affirming the trial court's decision that each party bear its own costs in a case where a plaintiff successfully showed a breach of contract, but failed to provide adequate evidence to show damages that were not mere speculation).

The district court correctly perceived that the prevailing party determination was within its discretion. However, the district court abused its discretion by determining that Peterson was not the prevailing party. The court held that Peterson prevailed on his affirmative defense of accord and satisfaction, but lost on his claim of conversion. Therefore, the court required the parties to pay their own fees and costs to fairly and equitably apportion those costs. This determination was an abuse of discretion for two reasons. First, the primary issue in this case was the claim to collect on the promissory note. In the district court's decision, it made no findings on the substance or merits of the conversion claim because it determined that the claim was unnecessary as a result of Peterson's successful defense of the collection claim. However, in its decision denying costs and attorney fees, the court did an about-face and found that the conversion claim was *not* in the alternative and that Peterson lost on that claim. This finding was contrary to the argument presented at trial. During trial, Peterson's attorney explained that the claim for conversion was in the alternative.[10] Second, the court made no mention of the fact that the Shores' claim for conversion was dismissed after the presentation of their case-in-chief at trial. Thus, the district court's decisions are inconsistent, and the district court erred by failing to identify Peterson as the prevailing party.

Because Peterson was the prevailing party below, the case is remanded for the district court to determine his award of costs as a matter of right and discretionary costs, if any. Additionally, Idaho Code § 12-120(3) compels an award of attorney fees to the prevailing party in an action to recover on a note or other commercial transaction. I.C. § 12-120(3); *BECO Constr. Co. v. J-U-B Eng'rs, Inc.*, 145 Idaho 719, 726, 184 P.3d 844, 851 (2008). Therefore, because Peterson is the prevailing party, the district court must determine the amount of his

---

[10] Toward the end of trial, Peterson's attorney stated: "We asserted conversion, if there was no accord and satisfaction. If there was an accord and satisfaction, if we are able to prove that there was an accord and satisfact[ion], they kept the tools, the promissory note is wiped out. Our position is that our counterclaim is conversion. If they are saying that there was no accord and satisfaction, then why did they keep the tools? If they kept his tools and there was no accord and satisfaction, then they have converted his tools."

16

attorney fee award under Idaho Code § 12-120(3).  Neither party requested attorney fees on appeal.

**V.**

For the abovementioned reasons, we affirm the district court's judgment on the merits, vacate the order denying Peterson's claim for costs and attorney fees, and remand for further proceedings consistent with this opinion.  Costs on appeal to Peterson.


Justices BURDICK, W. JONES, and HORTON, and Justice Pro Tem KIDWELL CONCUR.